National Union Bank of Watertown *v.* Landon.

The judgment should be reversed, and a new trial granted, costs to abide the event.

MORGAN, J., dissented.

[ONONDAGA GENERAL TERM, October 5, 1869. *Bacon, Foster, Morgan* and *Mullin,* Justices.]

---

## NATIONAL UNION BANK OF WATERTOWN *vs.* LANDON and others.

An iron manufacturing company having been dissolved, the defendants, who had been stockholders therein, became the owners of the furnace and other property formerly owned by the corporation. On the 18th of Nov., 1863, they, by an agreement in writing, agreed to unite in getting up a stock for another full blast, and to run the furnace and make iron ; and they thereby constituted or authorized S., one of their number, their agent and superintendent to manage and carry on said furnace and get up stock for another blast, and to sell iron, individually agreeing, at all times to furnish money when called on by S., for the purpose of defraying expenses of carrying on the business; and to pay *pro rata*, i. e., in proportion to the amount of stock held and owned in said former corporation by each of them. Under this agreement a single blast was got up, under the management of S.; and to pay the expenses thereof, a note was given by him, in the name of the former company, signed by him as " agent." In an action thereon, against the defendants, brought by a *bona fide* holder, by whom it had been discounted.

*Held,* 1. That the defendants, having a community of interest in the property, and being entitled to share in the profits and bound to bear the losses resulting from the business, were copartners, and had all the powers and were subject to all the duties incident to that relation.

2. That by the written agreement of Nov. 18, the power of S., the general agent, was restricted. That under it, he could not, as between himself and his copartners, give notes that would bind the copartners.

3. That the business of the firm was such that a general agent, according to the usual course of business, could make notes binding on the firm, when they were given for the purpose of carrying on the business.

4. That the plaintiff was justified in treating S. as the general agent of the copartnership, and, as such, authorized to make notes in the course of its business.

5. That the limitation of the authority of the agent not being known to the

plaintiff, or its cashier, did not affect it; and it had the right to consider S. as the general agent of his firm.

6. That S. being a partner in the firm, had the power to make the note in suit and thereby bind his copartners; and that the restriction on his authority, contained in the written agreement, did not affect the plaintiff, inasmuch as it was not communicated to the plaintiff.

As a general proposition, a copartner has the right to give a promissory note in the name of his firm without, and even against, the assent of his copartner; and all the members of the firm will be liable thereon, provided it be given in good faith, for partnership purposes, or to one who pays for it a valuable consideration without notice that it is given for a purpose not within the scope of the partnership.

And in an action upon a note thus given, the defendent is bound to overcome the presumption that the note was given for partnership purposes.

APPEAL by the defendants Landon, Bostwick and Conklin from a judgment on the report of a referee. The defendants Spencer, Merwin and Mark W. White were not served with process, and did not appear in the action. Henry S. White and Sardam were served with process, but did not answer the complaint; no judgment was entered against them until the determination of the whole action. The other defendants, Landon, Bostwick, Conklin and Fuller, defended the action. The defendant Fuller died before judgment. Landon and Bostwick resided in Connecticut, and Conklin in Michigan, and neither of them were within this state during the time of the transactions involved in the action.

The action was against the defendants (other than Mark W. White) as makers of a note in these words:

"$10,000.                    Redwood, April 1st, 1865.

Three months after date we promise to pay to the order of M. W. White, ten thousand dollars at the Union Bank of Watertown, N. Y., for value received, and interest.                    REDWOOD IRON M'F'G Co.

S. C. SARDAM, Agent."

The note was indorsed by the defendant M. W. White, and discounted by the plaintiff, in the ordinary course of business, before due.

National Union Bank of Watertown *v.* Landon.

The appellants put in issue the making of the note by them, and all the material allegations of the complaint.

They also set up a special agreement by which certain powers were conferred upon Sardam, and denied his authority to give the note.

The principal question upon the merits was as to the power of Sardam to bind the appellants and their associates in this form.

The authority was claimed for Sardam as partner or agent of the defendants who were sued as makers of the note, and the judgment was placed on the ground of *agency.*

Shortly before November 18, 1863, the charter of a corporation known as "The Redwood Iron Manufacturing Company," located and doing business at Redwood, had expired, and the defendants (other than Mark W. White) together with one R. Tozer were the only stockholders of the corporation at the close of its existence.

On the 18th of November, 1863, a paper was prepared, and was signed at different times by the defendants, other than said Mark W. White, the last signer (Merwin) affixing his name in the summer or fall of 1864, and under this instrument the business of working up and closing out the stock of the corporation was carried on ; and the claim is that the note in suit was given in the prosecution of this business.

The defendants Conklin, Spencer, Fuller and Merwin were not present on the 18th day of November, 1863, and had at no time, so far as the evidence shows, any knowledge or information of any transactions, arrangements or authority outside of the instrument, or modifying its terms.

The paper writing is in these words :

"Redwood, 18th Nov., 1863.

We the undersigned, stockholders of the former Redwood Iron Manufacturing Co., hereby agree to unite in

getting up a stock for another full blast or as near so as possible, and run the furnace and make iron; and we hereby constitute or authorize S. C. Sardam our agent and superintendent to manage and carry on said furnace and getting up stock for said blast; to sell iron, and we individually agree at all times to furnish money when called on by said Sardam for the purpose of defraying the expenses for carrying on said business. That we are to pay *pro rata*, meaning in proportion to the amount of stock held and owned in said Iron Manufacturing Company by each of us.

                    H. S. WHITE
                    HORACE LANDON
                    ISAAC N. CONKLIN
                        by H. LANDON
                    ROBERT BOSTWICK
                    S. C. SARDAM
                    G. M. SPENCER,
                        by JOS. FAYELL, Atty.
                    J. W. FULLER
                    N. W. MERWIN."

Under this arrangement a single blast was got up under the exclusive management of Sardam, aided and assisted by the Whites, all the other parties except Mr. Fuller residing out of, and not being within the state during the time, and Fuller residing some distance from the furnace, and not visiting it except once, and at no time taking any part in, or having any knowledge of, the business. The operations were continued until May or June, 1865.

The referee ordered judgment for the plaintiff for the balance due on the note.

*W. F. Allen*, for the appellants.

*M. H. Merwin*, for the respondents.

*By the Court,* MULLIN, J. I cannot doubt but that the defendants were partners in getting up stock for another blast in the furnace at Redwood, running such furnace and making iron therefrom, under the agreement of 18th November, 1863.

The defendants had been stockholders in the corporaration known as the Redwood Iron Manufacturing Company. That company had been dissolved, and the defendants became, in some way, owners of the furnace and other property formerly owned by such corporation suitable for the manufacture of iron. The defendants then had a community of interest in the property, and they became entitled to share in the profits, and bound to bear the losses resulting from the business. They were therefore copartners. (*Cumpston* v. *McNair*, 1 *Wend.* 457.)

As a general proposition, a copartner has the right to give a promissory note in the name of his firm without, and even against, the assent of his copartner; and all the members of the firm will be liable thereon, provided it be given in good faith, for partnership purposes, or to one who pays for it a valuable consideration without notice that it is given for a purpose not within the scope of the partnership. And the burthen is on the defendant to overcome the presumption that the note was given for partnership purposes. (*Vallett* v. *Parker*, 6 *Wend.* 615. *Whitaker* v. *Brown*, 16 *id.* 505. *Smith* v. *Lusher*, 5 *Cowen*, 688. 15 *Wend.* 364. 18 *id.* 466. 20 *id.* 251. 22 *id.* 324.)

Sardam testifies that he was one of the partners, and is one of the defendants; that he made the note in question, and passed it to M. W. White for the money. White was the secretary of the defendants' firm, and must be presumed to have been aware of the powers of Sardam, and the purposes for which the note was made. As between the defendants and him, there would be no difficulty in the defendants availing themselves of any

want of power in Sardam to give the note, or of bad faith in its negotiation.

But White indorsed the note, and had it discounted for his own benefit, by the plaintiff, and it was credited to him on the books of the bank, before its maturity.

Now let us see what notice the bank had of a want of power in Sardam to make the note, or of bad faith, if any there was, in its transfer to White. Sardam had been the agent of the Redwood Manufacturing Company while that company carried on the business of making iron at Redwood; and as such he had made and procured to be discounted by the plaintiff, for the benefit of the corporation, sundry promissory notes. The plaintiff's cashier knew there was such a corporation, but he did not know, when the note in question was presented for discount, that the corporation had been dissolved and a copartnership formed, to carry on the same business, and at the same place. In short, he supposed he was dealing with the corporation. After dissolution by the expiration of the charter, or by the act of a court of competent jurisdiction, no new debts could be created against it; however ignorant the creditor might be of its dissolution. The copartnership assumed the name of the corporation, and notwithstanding that the plaintiff and its officers were ignorant of its formation, the members of it became liable for all debts properly created by its duly authorized agents.

The defendants had the right to adopt any name they pleased, in which to carry on the business; and obligations executed by them in that name bound them, if otherwise valid. ( *Wright* v. *Hooker*, 10 *N. Y.* 51.)

Notwithstanding the plaintiff's officers may have been ignorant of the formation of the partnership, the law charges them with notice of the general purposes of the copartnership and of the nature and extent of the powers of the agents employed by it, when such agents are not, or do not act as, partners. Each partner is the

National Union Bank of Watertown *v.* Landon.

agent of his copartner in all matters pertaining to the joint business. (*Story on Part.*, § 1–101.)

A note or other obligation made by a partner in the name of his firm, for purposes not within the scope of the partnership, is as worthless as if made by its humblest servant without its authority. The implied power of a partner to bind his copartners by notes given in the firm name is limited to cases in which the borrowing of money or the purchase of property on credit is usual or customary. In such cases, the law presumes the authority, from the nature of the business. But when the nature of the business is such that credit is not necessary and therefore presumed not to have been contemplated by the parties, the power of a partner to bind his copartners by notes or bills will not be presumed; and in the absence of authority from the copartner thus to bind them, they will be void, as to them. (*Story on Part.* 102 *and note* (1.) 3 *Kent's Com.*, *4th ed.*, 411.)

If this is a correct exposition of the law, it follows that if the note in question is to be considered as made by Sardam as one of the copartners, his copartners are liable. The business of the copartnership was such an one as that dealing on credit will be presumed to have been contemplated; and when that is the case, one partner may, by note or bill, appearing on its face to be a copartnership obligation, bind all the copartners.

To escape this result, the defendants' counsel insists, 1st. That the relation of the defendants to each other was not that of partners, but it was a joint adventure, merely, without interest in the profit and loss resulting therefrom. 2d. That the agreement entered into between the defendants, when the connection was formed, made Sardam their agent and defined his powers; and that by it he could not bind them by any obligations made by him to which they did not all assent. And 3d. That if Sardam is to be considered as acting as a partner, in drawing the note, his power is limited and

regulated by the same agreement, and he had no power to bind the copartners without their assent.

I have said all I consider it necessary to say in regard to the first of the three propositions, except this. It would be difficult to understand what object the defendants had in view in buying coal and employing men, and making another blast, if it was not to share in the profits of the business, if any accrued. That they must bear the losses could not be questioned nor evaded. There is nothing in the agreement of the 18th of November that would authorize the inference that it was intended, when the blast was completed, to divide the property amongst the partners in proportion to the interest each had in the business. Such an arrangement would be inconsistent with the provision of the agreement which authorizes Sardam to sell the iron. If he sold, it is to be presumed he would get money, and that money would belong to the copartnership. But if the agreement was to divide the iron produced by the blast, it would be a division of profits, if any were made, and it is hardly credible that such an enterprise would have been undertaken in the expectation that there would be not only no profits, but 300 per cent. loss, as the result of it.

2d. That Sardam was the agent of the copartnership is most clearly established by the articles of copartnership. They provide as follows: "and we hereby constitute or. authorize S. C. Sardam our agent and superintendent to manage and carry on said furnace."

But this does not help the defendants, unless they can show that his power as agent was so limited that he could not make a note binding on them. The power actually given was "to manage and carry on said furnace, get up stock for said blast, to sell iron, and do everything pertaining to said business." Larger powers could not be conferred upon an agent. He was therefore the general agent of the coparnership, and was

National Union Bank of Watertown *v.* Landon.

clothed with all the powers and duties pertaining to that relation. But his powers were limited. The copartners united in an agreement, in the articles of partnership, at all times to furnish money, when called on, by said Sardam, for the purpose of defraying the expenses of carrying on said business, in proportion to the amount of stock held by them, severally, in said company.

If the partners furnished the agent money to carry on the business, it could not have been intended that he should borrow money for that purpose, on their credit. It was not necessary. The agreement operated as a limitation upon the power to borrow money on the credit of the company and to give notes therefor.

If, then, Sardam is to be treated as a general agent, but without power to give the notes of the copartnership, for borrowed money, the next question for consideration is, whether the plaintiff is chargeable with notice of the limitation of the agent's authority; or whether it could deal with him as if there was no limitation upon it.

The note in question was given to White, who gave Sardam the money upon it. White took it with notice of the limitation of the agent's power. He could not have enforced the note against the defendants.

The plaintiff, as to this note, did not deal with Sardam. It discounted the note for White, and passed the proceeds to his credit, and it was therefore a *bona fide* holder for value, and entitled to the rights of such holder, unless it is charged with notice of Sardam's want of authority to make it.

When the note was presented to the bank its officers had notice, from the note itself, that it was made for the copartnership, by an agent. The name indicated the nature of the business in which it was engaged. And it had the right to assume that the agent had at least the ordinary powers of an agent of partners engaged in such business. Giving notes is not a part of such an agent's duty, unless he is either authorized to, or actually

does, with the knowledge of his principals, borrow money or purchase property on credit, in order to carry on the business intrusted to him. When, therefore, a note drawn by Sardam was presented for the first time to the bank, for discount, could it omit to inquire as to his authority to give notes for his principals, and be justified in so doing because they were engaged in a business in which, ordinarily or generally, agents were accustomed to give notes in the name of the corporation whose agents they were?

When a principal employs an agent, a broker, a factor, attorney at law or other person, who holds himself out as doing business for others—one or other of them copartners—or when an agent has for a considerable time been in the practice of issuing paper in the name of his principal, so that third persons dealing with him have the right to assume that his acts are either expressly or tacitly authorized and approved, all persons dealing with such an agent may safely assume that he is clothed with the powers usually given to such agents; and they are not bound to inquire whether there are or are not private instructions limiting or withdrawing such powers.

Sardam testifies that between November 18, 1863, the date of the articles of copartnership and the maturity of the note in suit, he made notes in the name of the company, and had them discounted at the plaintiff's bank. Upham says substantially the same thing; and the copy of the plaintiff's books corroborates them.

It is true that the cashier did not know of the formation of the partnership. He seems to have understood that he was still dealing with Sardam as the agent of the corporation. But his ignorance on that subject does not relieve the partners from liability. The copartnership having assumed the name of the corporation and omitted to disclose the fact that the business was thereafter to be conducted by them, and not by the cor-

poration, those who had dealings with Sardam as agent had the right to assume that he was clothed with the same powers under which he had theretofore acted.

If these views are correct, then the plaintiff's cashier had the right to treat Sardam as the general agent of his principals, authorized to make notes in the name of the copartnership for the purpose of carrying on the business of the firm. Although he was acting under an authority which did not permit him to give notes, yet as knowledge of such restriction was not brought home to the plaintiff it does not affect it or impair the validity of the note.

3d. As to the power of Sardam to bind the defendants, being one of the partners. I cannot discover any reason why, when one of several copartners is made by the copartnership articles the general agent of the firm, his power should be any more restricted than when he acts as the agent of his copartners without any such formal appointment. Restrictions on his power to bind his copartners do not affect his dealings with third persons, unless they are informed of the limitation. Whether he acts with or without the specific appointment of agent, he is a partner, and as such authorized to bind his copartners.

I cannot agree with the referee that if Sardam was a special agent, acting under a special power of which the plaintiff is to be presumed to have had notice, the subsequent authority given to Sardam, by Bostwick and Conklin, or either of them, to make notes on which to raise money for the use of the firm, enlarged in any degree the powers conferred upon the agent by the agreement of 18th of November, 1863. That agreement was made by all, for the benefit of all. And no part of the number less than the whole could change it, so as to bind the whole. If a part of the copartners could enlarge the powers of the agent, so as to bind the whole, when the whole were not before bound, so might they

release a part of their number from all liability for losses or expenses of the business, and cast the whole burthen on the rest. No such principle could be tolerated.

But perhaps the view of the referee was that if one of several copartners, when called on for information as to the powers of an agent, represents that they are more extensive than they in truth are, such a representation binds the firm. This may be so. But it has no application to the case. No such application or representation is proved to have been made in this case. The letters and sayings of Bostwick and Conklin are relied upon as conferring new authority upon the agent whereby all the copartners were bound. They could bind all when they acted for all; but when they spoke and acted for themselves, they could not alter or modify the articles by which the rights of the partners were regulated.

This error of the referee, if it was one, does not affect the question on which the liability of the defendant rests, and need not therefore be considered further.

My conclusions are:

1st. That the defendants were partners, and had all the powers and were subject to all the duties belonging to persons occupying that relation.

2d. That by the agreement of 18th November, 1863, the power of Sardam, the general agent, was restricted. Under it he could not, as between himself and his copartners, give notes that bound the copartners.

3d. The business of the firm was such that a general agent, according to the usual course of business, could make notes binding on the firm, when they were given for the purpose of carrying on the business.

4th. The plaintiff was justified in treating Sardam as the general agent of the copartnership, and, as such, authorized to make notes in the course of its business.

5th. That the limitation of the authority of the agent not being known to the plaintiff or its cashier, did not

affect it. It had the right to consider Sardam as the general agent of his firm. ·

6th. Sardam being a partner in the firm had the power to make the note in suit and thereby bind his copartners; and the restriction on his authority contained in the agreement of 18th November, 1863, did not affect the plaintiff, as it was not communicated to the plaintiff.

For these reasons, I am of opinion that the judgment of the referee ought to be affirmed.

All the justices concurring,

· Judgment affirmed.(*a.*)

[ONONDAGA GENERAL TERM, January 4, 1870. *Bacon, Foster, Mullin* and *Morgan,* Justices.]

(*a*) Affirmed by Court of Appeals. See mem. 40 *How. Pr.* 721.