By the Court.—Speie, J.
In 1871 the defendants, together with one Edgar Thompson, now deceased, entered into an agreement among themselves, and with others whom they should associate with them as a body corporate in law to transact the business for furnishing materials for, and the building, making, and equipment of railroads in the State of Iowa, and all proper extensions of the same in adjoining States, hav *283 ing the principal office or place of business at Davenport in that State. Subsequently the said defendants, with the other defendants who became associated with them in the business, and who also became stockholders of the proposed company, entered upon the transaction of the business so proposed, and continued to conduct it under the name of the Davenport Railway Construction Company, and under that name made and delivered the promissory notes in suit.
The first question presented is: had the defendants a legal, corporate existence, when in the name of the company they made, indorsed and delivered the several notes set out in the complaint ?
What is necessary and essential to create a corporate existence must depend upon the particular construction of the language and provisions of the statute in each case.
It appears that the defendants proposing to become incorporated failed to comply with the requirements of the statute as to the recording of articles of incorporation in the office of the secretary of state, and the due publication in the time prescribed by law. The plaintiffs claim that by this omission, by the true construction of the statutes of Iowa, and according to the settled principles of the common law, the defendants assuming to act in a corporate capacity without legal organization as a corporate body are liable as partners to those with whom they contracted. The suit is therefore brought against the defendants as individuals, liable, not for the reason that they are liable as stockholders of a corporation, but because there was no corporation, and they were not stockholders—not merely upon a statutory liability, but upon a liability against which they seek to shelter themselves by interposing a statutory protection as a defense.
The articles of incorporation in question were filed in the office of the recorder of deeds on May 17,1871. The *284 law in force at that time—Revision, § 1152, as amended by chapter 172, Laws of 1870,—provides: “Previous to commencing any business, except that of their own organization, they must adopt articles of incorporation, which must be recorded in the office of the recorder of deeds of the county where the principal place of business is to be, in a book kept therefor, and in the office of the secretary of state in a book kept for that purpose.” Section 1154 provides that a notice must ¡be published for four months in succession in some newspaper, as convenient as practicable to the principal place of business. Section 1155 prescribes the contents of such notices. Section 1156, as amended by •the same chapter, is as follows : “The corporation may commence business as soon as the articles are filed in' thenffice of the recorder of deeds, and their doings shall be valid if the publication in a newspaper is made, and •the copy filed in the office of the secretary of state within three months of such filing in the recorder’s office.”
It is to be observed, first, that the language of section 1152 is mandatory and not merely directory. It affirms the want of any right to enter upon any business except that of organization until the articles of incorporation are adopted and recorded in the office of both the recorder of deeds and the secretary of state. The use of the negative expression determines the mandatory character of the statute. When the statute imposes a duty and gives the means of performing it, it is held to be mandatory (Cooley Constitutional Limitations, 89, 4th ed.; People v. Schermerhorn, 19 Barb. 558). The language of section 1156, as amended by the same chapter, permits the corporation to commence business as soon as the articles are filed in the office of the recorder of deeds, but significantly adds, “Their doings 'shall be valid if the publication in the newspaper is made and the copy filed in the office of the secretary of state within three months after such filing in the recorder’ s office.” Section 1166 provides: “A failure to *285 comply substantially with the foregoing requisitions in relation to organization and publicity, renders the individual property of all the stockholders liable for the corporate debts.” McKelly v. Stout, 14 Iowa, 359, decides that the prime object of this requirement is to make individual corporators liable for the failure to do those things which are necessary to the transaction of business (City of Dubuque v. City of Dubuque, 7 Iowa, 262 ; Dishon v. Smith, 10 Id. 212-218). These statutes have received the same construction in the neighboring State of Illinois as in Iowa (Bigelow v. Gregory, 73 Ill. 197).
It must, I think, be considered by the construction of these and the like statutes in Iowa, as expounded by the supreme court of that State at the time the notes herein sued on were given, as settled law, that the failure to file the articles of incorporation in the office of the secretary of state, was fatal to the attempted creation of the corporation, and the stockholders, consequently, were left exposed, as at common law, to individual liability for the debts of the company.
The company, then, existing in name only, independent of any sanction of general or special law, can be nothing more than an ordinary partnership, and subject to the same laws. It cannot be said that proceeding to transact business with third parties they incur no liability. They were not liable as stockholders, for there was no corporation. There being no corporation, each must be liable as' a partner at common law. Assuming to act under a corporate name without a legal organization as a corporate body, they must be held liable as partners to those with whom they contracted. At that time they had a community of interest in the property, and they were entitled to share in the profits, and bound to bear the losses resulting from the business (Fuller v. Rowe, 57 N. Y. 23; National Union Bank of Watertown v. Landon, 45 *286 Id. 410; affi’g 66 Barb. 189; Wells v. Gates, 18 Id. 554).
The defendants’ liability is not affected by the fact that the plaintiffs, when they took the notes, supposed they were the notes of the corporation, and were ignorant of their corporate existence. They believed the paper to be that of the incorporation, from the fact that the business was done in the same name, and they had a right to proceed against the real makers of the notes, upon discovering who were transacting business under that name (National Bank of Watertown v. Landon, supra). Nor does the fact that because the defendants did not intend to become copartners at common law, and become liable as general partners, furnish any answer to the claim of the plaintiffs. It is enough that the parties assumed to act in a corporate capacity, without a legal organization as a corporate body. The court say, in Fuller v. Rowe, cited above, it cannot be denied that they are liable as partners in such a case to those with whom they contract. Intention of the parties has nothing to do with their liabil- ■ ity. The legal effect of the nature of the agreement into which the defendants entered, was such that it made them partners until they should comply with the essential proceedings declared by the statutes of Iowa, to become a corporation. The only question involved in such a case, relates solely to the liability created by the defendants, to all persons with whom they deal. It is unnecessary to refer to the numerous instances where parties are guiltless of any intention of creating a partnership relation, which the law nevertheless pronounces does exist, and enforces the liability arising out of that relation.
It is claimed that a corporation in fact and user under it were sufficient to show a corporation defacto, and that these omissions to comply with the statutes cannot be urged collaterally against their existence, but only in a direct proceeding. The defendants sought *287 to join themselves into a corporation under the provisions of a general law. In such a case it is only in pursuance of the provisions of the statute for such purpose that corporate existence can be acquired. Where a corporation is created by a special charter and there have been acts of user under it the rule may have some application. •
Section 1338 of the revised code, passed March 20, 1858,—which is as follows: “Be it enacted by the general assembly of the State of Iowa, that section 689 of the code” (this section is identical with section 1166 of the revised code) “shall not be deemed and construed to be applicable to railroad corporations and corporators; and stockholders.in railroad companies shall be liable only for the amount of stock held by them in said companies,”—has no application to the present case.
The Davenport Railway Construction Company was organized for the purpose of furnishing materials for constructing railroads generally, and not for the purpose of building and operating railroads. The defendants did not suppose that they were authorized to build and operate railroads, nor did they organize for that purpose. In August and September, 1871, before they made the notes in question, they published in the Daily and Weekly 'Davenport Gazette, a notice of their incorporation—giving the title of their company, place of business and its general nature,—which was “ to make and perform a contract with the Davenport and St. Paul Railroad Company to furnish iron and equipments for the said company’s roads, including the construction of depots, machine-shops, water-stations, and all such other buildings and accessories as shall be necessary to the successful operation of said road.” Can there be any doubt what the real intention of the defendants was % They published to the world what the general nature .of-*1-Mr business was ; not to operate a railroad, but to ma*. md perform a contract with a *288 railroad company then in existence, which was owned by and being or to be operated by another and separate company.
An examination of the revision of the statute of 1860 makes it apparent that there is a clear distinction between a railroad corporation and all other corporations, and the supreme court of the State of Iowa has settled that such distinction existed before and at the time the notes in question were issued. State of Iowa v. County of Wapello (13 Iowa, 388), overruling Dubuque County v. Dubuque & Pacific Railroad Co. (4 G. Green, 1), and approving Stokes v. County of Scott (10 Iowa, 166) decides that the legislature has no power to authorize counties to become, as corporations, stockholders in railroad companies. A construction company, which contains no element heretofore known to our courts or to the public as railroad corporations, would be a more startling proposition than that counties could become stockholders in railroad corporations.
The case comes up before this court on a contract made and to be performed in New York, between plaintiffs, all citizens of New York, and defendants, not citizens of Iowa. The contract in the suit was-made; and the rights of the parties thereunder became vested at the time the law existed as settled in the State of Iowa. Three years thereafter, the supreme couftof the State reversed the law, which till then had been deemed settled by a decision first made known in December, 1875. Although the case was first heard by two judges, the diversity of their' opinions was so great it may be justly said, that nothing was decided by the court. Day, J., held, that the filing of the articles of incorporation in the office of the secretary of state, was essential to the valid creation of the corporation, but that it was a railroad corporation, and its stockholders were exempt from liability, while the other *289 justice, Beck, held the reverse on both propositions. Afterwards, at the June terra, 1876, since the trial of the case at bar, a rehearing was had, and all the five judges of the court took part, and here again they divided, three to two. Beck, Severs, and Bothrick holding the filing to be non-essential, and the other two dissenting from that, and Day, Servers, and Bothrick holding that it was a railroad corporation, and the other two judges dissenting from that.
When we consider what a railroad corporation is— that it has nothing to do with local law, that the term is so well defined, and conveys the idea of oneness so absolutely as to be incapable of two different meanings —that it is simply a definition of a substantive thing— as well and as universally known and understood by all English-speaking people as the definition of law itself, or as'any other term well known and defined in the common and accepted use of our language, the courts of this State and of other States upon principles of comity according to the settled principles of law must, we think, hold that at the time of the giving of the notes the construction company was not a railroad company, and that the defendants were personally liable as adjudged in this court below. Comity holds the parties to what according to the law as expounded at and prior to the time of the making of the contract they must have understood their respective rights and liabilities to be. It accepts the construction of the statute by the courts of the State which enacted it with the same force as if that interpretation was incorporated in the statute in terms. The fundamental law will not permit either the legislature, or the courts of the State enacting the statute, by a subsequent change of the construction of the statute in another forum to impair the obligation of contracts already fixed.
The rule is stated with precision in the case of Butz v. City of Muscatine (8 Wall. 575). The su *290 preme court of Iowa had, by a uniform course of decisions, promulgated after the issue of the city bonds, denied the right of the holders to the remedy sought under the acts in force ■ at the time of their issue. It holds that under the. statute of • Iowa, in force when the contract was made, the relator was entitled to the remedy he asked, and that this right can no more be taken away by subsequent judicial decis-. ions, than by subsequent legislation (Von Hoffman v. City of Quincy, 4 Wall. 535). In Edwards v. Kearzy (15 U. S. Sup. Ct., reported in full in Albany Law Journal, May 4', 18.78, p. 346), it was held that a law of North Carolina, exempting personal property and a homestead of. a debtor from sale and execution, was invalid as to debts contracted before its enactment. The court says: “The remedy subsisting in a State ' when and where a contract is made, and is to be performed, is a part of the obligation, and any subsequent law of the State, which so affects that remedy as substantially to impair and lessen the value of the contract, is forbidden by the constitution, and is therefore void.” In Brown v. Kenzie (1 How. U. S. 311), Taney, Ch. J., speaking of the protection of the rem-edy, says, it is this protection which the clause of the constitution now in question mainly intended to secure. In Green v. Ridder (8 Wheat. 11), Story, J., “If the remedy afforded be qualified and restrained by conditions of any kind, the right of the owner may indeed subsist, and be acknowledged, but it is impaired and rendered insecure, according to the nature and extent of such restrictions ;” and at page 75, “ The prohibition of the constitution embraces all contracts executed or executory between private individuals, or a State and individuals, or corporations, or between the States themselves.”
It appears that the defendants were jointly engaged in business under the name in which the notes were *291 issued, and that they were given by their representatives for goods sold and delivered to them and used in their common business. I see no good reason why they should not have been given in evidence against themselves.
We think the exceptions should be overruled, and judgment upon the verdict ordered with costs.
Freedman, J., concurred.