## RICHARDSON v. ERCKENS.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

**1. PARTNERSHIP—BILLS AND NOTES—ACTIONS—BURDEN OF PROOF.**

In an action on a note given by a partnership of which defendant was a member, where defendant affirmatively alleges that the note was made without his authority as a member of the firm, and that it was not given in the usual course of business of the firm, or for any partnership purpose, or for any consideration to the defendant or his firm, he has the burden of proving such defense.

**2. SAME—SUFFICIENCY OF EVIDENCE.**

In an action on a note given by a firm, where the defense was that it was made without the authority of defendant, and not in the transaction of any partnership business, the only evidence was the testimony of plaintiff that he had been a special partner in the firm of H. & O.; that the firm was dissolved on the 30th of December, 1893, which was on a Saturday, and on the next business day, which was January 2, 1894, 10 notes were delivered to plaintiff, representing his capital in the partnership (the note sued on being a renewal of part of those notes); that, in consideration of those notes, defendant gave up all his interest in the assets of the old firm. By the partnership articles between H. & O. and defendant, introduced by defendant as an exhibit, it appeared that the new partnership was formed on the day that the old was dissolved; that defendant was to contribute the amount that plaintiff had taken out, and H. & O. were to contribute their share or interest in the assets as appeared on that day; that the partnership should commence on the 1st of January, 1894; and that neither of the partners should pledge the partnership funds or credit to any person, except in the ordinary course of business. *Held* that, in the absence of any proof by defendant, plaintiff had sufficiently shown that the notes were given by the partnership in the course of the partnership business, and for a consideration moving to it, since the procurement of his interest in the assets was necessary to the constitution of the new firm, and defendant, by continuing in the firm as a general partner, assented to the transaction.

Van Brunt, P. J., and Rumsey, J., dissenting.

Appeal from trial term, New York county.

Action by Christopher Richardson against John O. Erckens on a note. From a judgment for plaintiff, defendant appeals. Affirmed. See 62 N. Y. Supp. 1073.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Charles E. Hughes, for appellant.
T. B. Chancellor, for respondent.

PATTERSON, J. The defendant appeals from a judgment entered upon a verdict directed for the plaintiff. The action was upon a promissory note dated January 23, 1896, made in the firm name of Hinck & Ould, for the sum of $20,000, payable 12 months after date to the order of Christopher Richardson, the plaintiff. The members of the firm, the makers of the note, were Henry J. Hinck, Thomas Ould, and John Oscar Erckens. Erckens alone defended. In his answer he admits the co-partnership, and that the note sued on had not been paid, but he asserts that it was not an obligation of his firm, and affirmatively claims that it was made without his authority as a member of the firm; that it was not given in the course of business of the firm, or for any co-partnership purpose, or for any consideration whatever moving to the defendant or his firm. And he further alleges that the plaintiff had knowledge of those facts. As the case was tried, and upon the record presented to us on this appeal, the primary question seems to be the right of the plaintiff to cast upon the defendant the burden of establishing the affirmative defense; and, secondly, whether, on the proofs as made, the defendant has sustained that burden.

We take it to be the settled law of this state that in an action upon a promissory note, even between the original parties, the possession and production of the note at the trial raise the legal presumption that it was given in the course of business and for value, and that it is to be paid by the maker, as the primary debtor (Bank v. Barry, 1 Denio, 116; Bank v. Green, 43 N. Y. 298), and, further, that, where a bill or note is given in a partnership name, it is presumed, in the absence of contrary evidence, to have been given in the partnership business (Doty v. Bates, 11 Johns. 544; Bank v. Landon, 66 Barb. 193; Church v. Sparrow, 5 Wend. 223; Whitaker v. Brown, 16 Wend. 507). Doty v. Bates, supra, was a case in which a note was made by one partner. It recited, "I promise to pay," but was signed in a co-partnership name. In a suit by the payee, it was held that the note was binding upon the firm, and not upon the partner alone who executed it, and that, where a note is made by one partner in the name of the firm, it will be presumed that it was made in the course of partnership dealings, and, if it were not so given, that fact is a matter of defense, which must be proved by the party seeking to take advantage of it. In Whitaker v. Brown, 16 Wend. 505, referring to Doty v. Bates, it is said that the note of a firm is deemed, in the commercial community, prima facie, to have been given in the legitimate course of the partnership business, and such is the judgment of the law; and consequently the partner objecting to be made liable is bound to make out a case which will exonerate him, and upon him is cast the onus probandi. As recently as the case of Martin v. Manufacturing Co., 122 N. Y. 174, 25 N. E. 303, still referring to Doty v. Bates, it is said that when such a note is given in a transaction unconnected with the partnership business, and known to be so by the person taking it, the other partners are not bound, without their consent, but prima facie the firm note binds all the partners, and the burden of proving want of authority lies upon the firm. We think the presumption, in its full effect, applies as well between

the original parties to the note as to subsequent transferees; but when it is made to appear, in an action between the original parties, that the note was given outside of the business of the firm, then it becomes incumbent upon the holder to show that he is a bona fide purchaser, or that the note was authorized to be made by all the members of the partnership. The rule is stated in Smith v. Weston, 159 N. Y. 195, 54 N. E. 38, to be:

"While, upon the production of the note by the plaintiff, and proof of the signatures of the parties thereto, * * * a prima facie case was established in his favor, as soon as it appeared that the note was indorsed outside of the firm's business, and without authority of all the members, the burden of proof shifted, and, in order to recover, it was necessary for the plaintiff to show he was a bona fide purchaser, or that the indorsement was authorized."

The plaintiff in this action, therefore, could have presented his note (the signature of the firm thereto being admitted), have stood upon the presumptions attaching to it, and, in the absence of proof upon the part of the defendant impeaching the paper, would have been entitled to recover. But, for some reason which is not disclosed, the plaintiff was examined as a witness in his own behalf; and certain facts were proven from which the defendant now contends that, in connection with the provisions of the co-partnership articles between Hinck, Ould, and himself, it was shown that the note sued on was not business paper of the firm. Thus, we are brought to the question secondly presented, viz. whether the record shows a state of facts overcoming the legal presumption which would make this note in the plaintiff's hands prima facie a valid and enforceable obligation of the firm. According to the testimony of the plaintiff, and upon which the defendant relies, the firm signature to the note was made by Mr. Hinck, one of its members. In 1893 there existed a special partnership under the name of Hinck & Ould, of which they were the general partners, and Richardson the special partner. Richardson had contributed as capital to that limited partnership the sum of $100,000. That partnership was dissolved on the 30th of December, 1893, and on the same day Hinck, Ould, and Erckens formed a general partnership under the firm name of Hinck & Ould. On the 2d of January, 1894, 10 notes, aggregating $100,000, were delivered by Hinck to Richardson. The 30th of December, 1893, was a Saturday. On the next business day, which was January 2, 1894, the 10 notes were delivered to the plaintiff. The note sued on in this action was a renewal of part of those 10 notes. The plaintiff gave up all of his interest in the assets of the old firm as consideration for the original 10 notes. The assets of that old firm consisted of book accounts, advances made to manufacturers, stock, and everything that went to make up the business of Hinck & Ould, of which the plaintiff was a special partner. In the co-partnership articles between Hinck, Ould, and Erckens, which partnership was entered into the very day of the dissolution of the old firm, it is recited that whereas, Hinck & Ould have been doing business as co-partners with Christopher Richardson, trading under the name of Hinck & Ould, in the selling of dry goods on commission; and whereas, they (Hinck and Ould) are about to form a new co-partnership for selling dry

goods on commission, with Erckens, upon his contributing $100,000 in money,—therefore the articles witness that the parties reciprocally promise and agree to and with each other to form a co-partnership, the firm name of which should be Hinck & Ould, the general nature of the business to be selling of dry goods on commission, and "the amount of capital which the said John Oscar Erckens shall contribute to the common stock of said partnership shall be the sum of $100,000, which sum he shall actually and in good faith pay in in cash for the purposes aforesaid. And the said Henry John Hinck and the said Thomas Ould shall also each contribute to said common stock all his share and interest in the assets of the said business now or lately conducted by Hinck, Ould, and Richardson, as above mentioned, as the same shall be on the thirtieth day of December, 1893, which they believe will be together of about the value of $100,000, as the same shall then appear by the books of said firm." The period at which the partnership was to commence was to be the 1st of January, 1894, and to continue for three years. The articles also provided that neither of the partners should pledge the partnership funds or credit to any person, except for the purchase or consignment of merchandise in the ordinary course of the business, and also that neither of the parties should sign or execute any note, bill, or other writing for the payment of money for the accommodation or security of, or otherwise becoming surety, etc., for, any other person or persons, etc., without the permission of all the other parties to the agreement first obtained. The testimony of Richardson is all we have before us respecting the origin of the promissory note in suit, and the nature of the transaction out of which it arose. Can it be fairly said from it that the defendant Erckens has by proof overcome the legal presumption attaching to this note in Richardson's hands? Has he shown that it was not made in the course of business, or for the benefit of, or for a consideration given to, this firm? The situation would seem to indicate that it was a transaction entered into by the new firm for the purpose of acquiring the whole of the business of the prior firm, and all the assets of that firm, and all interests in those assets, so that they could be put as an entirety into that which was intended to be a going business from the date of the formation of the partnership. That business depended upon the contribution of the capital of Hinck & Ould, who were to put in their interests as specific assets transferred or carried over from the old firm, as those interests might appear by the books of the old firm on the 30th of December, 1893. The position of the parties was this: Mr. Erckens paid in his capital of $100,000. Hinck & Ould were to contribute their interest in the assets of the prior firm, estimated to be worth $100,000. Those assets were to be put in as of the date named, and then the business was to be inaugurated as an active concern. Meantime Richardson's capital was invested in those assets. It would be absurd to claim that the new partnership was to go on without the contribution of the capital of Hinck and Ould until the affairs of the old special partnership could be settled up, which might take an indefinite length of time. The share of Hinck & Ould in the assets of the prior firm were to be put in in specie,

and at once. They could not be separated,—they could not be taken out of the old firm so as to be put into the new one,—without the consent of Richardson, or in some way acquiring his interest as special partner. Hinck & Ould had no control of these assets in such a way as to authorize them to appropriate or separate them or put them into an independent business, but they were bound to liquidate, not to acquire all of them for themselves, and then put them all in the firm as their contribution. They were bound to contribute only their share of the assets, and not Richardson's interests or rights. There was, as before remarked, no way in which the new partnership could be formed so that the interest of Hinck & Ould in those assets of the old firm could be put at once into the new firm, unless Richardson consented to it, or the new firm in some way acquired them. The new firm practically succeeded to the old, and continued its business. Erckens has not shown ignorance of the situation, nor of the acts of his partners in giving Richardson the 10 notes.

I am of the opinion that, organized as this partnership was, with the impossibility of the firm being constituted with the capital and assets that were to form the basis of the co-partnership business without acquiring Richardson's interest, it cannot be said that the giving of the original 10 notes to Richardson was a transaction outside of the firm business, or for a consideration not moving to it, for the procurement of that interest seemed to be necessary to the constitution of the new firm, and those assets were taken over and delivered into the possession of the new firm,—formed part of that upon which it did business; and Erckens, by continuing in the firm as a general partner, and going on with that business with those assets in it, stands as assenting to the transaction which was had with Richardson. Of course, the validity and enforceability of this renewal note depend upon the validity and enforceability of the original 10 notes. Mr. Erckens has failed to show that those original notes were given outside of the business of the co-partnership, and there was not sufficient evidence to take the case to the jury on any issue of fact.

The judgment should be affirmed, with costs.

O'BRIEN and HATCH, JJ., concur.

RUMSEY, J. (dissenting). It is not to be disputed that when the plaintiff put in evidence his note dated in January, 1896, at which time it was admitted that Erckens was a member of the firm of Hinck & Ould, the presumption arose that it was given in the partnership business and for value; and, if that were all the case, there can be no doubt that the plaintiff was entitled to recover. But the question is whether there was any consideration for the note in suit, and, while it is not to be denied that the burden of proof in the first instance was upon the defendant Erckens to show that the note was not given for a consideration, yet it must not be forgotten that the question here is not whether he sustained that burden of proof, but whether he threw sufficient doubt upon the valuable consideration of the note to require the court to submit that question to the jury. There is no claim that any consideration passed between the par-

ties in 1896, when this note was given, and the consideration must stand, if at all, upon that given for the original note, dated on the 2d day of January, 1894. There was no concession in the case that Erckens was a member of the firm of Hinck & Ould which gave the note at that time. The concession was that he was a member of the firm of Hinck & Ould which gave the note in 1896. There was no concession, and surely there was no presumption, that the firm of Hinck & Ould which gave the note dated on the 2d of January, 1894, was composed of Hinck and Ould and Erckens, or that the original note which was given for the one in suit was given in the course of the business of that firm. As to this matter the whole case was left at large when the plaintiff closed his evidence. The facts which had appeared at that time were that the firm of Hinck, Ould & Richardson had been in business from the 30th of December, 1890, until the 30th of December, 1893, at which time the firm was dissolved. The 30th of December, 1893, fell on a Saturday, and the first business day thereafter was the 2d of January, 1894. On that day, as a result of the dissolution on the 30th of December, 1893, there were given by the firm of Hinck & Ould to Mr. Richardson who had left the firm, 10 notes, aggregating $100,000. Two of these notes constituted the sole consideration for the note in suit, which was dated over two years later. At the time of the giving of the original notes Mr. Richardson, as the consideration for them, "gave up" his interest in the firm of Hinck, Ould & Richardson. Whom he gave it up to does not appear; nor does it appear anywhere in the evidence of the plaintiff that at the time he gave up his interest, on the 2d of January, 1894, there was any such firm as Hinck, Ould & Erckens, or that Erckens had any relations whatever with any firm with which Hinck and Ould had any connection. So that, upon the evidence as it appeared when the plaintiff closed his case, there was an entire failure of proof that Erckens was a member of the firm which gave the notes at the time when the original notes were given. So, while the note in suit was properly in evidence, because Erckens was admitted to have been a member of the firm in 1896, when the note was dated, there was no evidence to show that at the time the original notes were given Erckens had anything to do with them. There was no suggestion that on the 2d day of January, 1894, Hinck, Ould, and Erckens were in partnership, and no intimation that the transaction which took place between Hinck, Ould, and Richardson on the 2d of January resulted in the transfer of any property whatever to Hinck, Ould, and Erckens, or resulted in anything except the giving up by Richardson of his interests in the former firm. The evidence given by the defendant afterwards strengthened the necessary inference to be drawn from the plaintiff's evidence that the new firm received no consideration for the $100,000 of notes, and that those notes were not given in the course of business of that firm.

In the first place, there was an express provision in the articles of association that the only business to be done was the selling of dry goods on commission; also, that no credits should be given, nor should any loan or promise be made by either partner upon the credit

of the fund, except for certain purposes, and there is no suggestion that the transaction with Richardson was one of those purposes. It necessarily appeared that the firm of Hinck, Ould & Erckens had done no business whatever when those notes for $100,000 were made; nor was there any proof that they had become the owners, in any way or for any purpose, of any interest in that former firm. By the express provisions of the contract, Erckens was to put in $100,000 in cash; Hinck and Ould were to contribute their interests in the assets of the old firm. It is suggested that their interests were said to be $100,000, but the precise amount or the precise proportion which their interests constituted in the old firm is nowhere stated. These were all the facts which appeared at the time that the learned justice, against the protest of the appellant, ordered a verdict for the plaintiff. A short recapitulation will show, I think, beyond any question, that at the very least they were sufficient to require that there should be sent to the jury the question whether there was any consideration for the original notes (not the note in suit). Hinck, Ould, and Richardson had been in partnership down to the 30th of December, 1893. They dissolved their partnership on that day. As a result of that dissolution, Richardson gave up (he did not sell) his interests in that firm. On the next business day after the firm had been dissolved, he received from his old partners notes given in the name of the old firm for $100,000, as a consideration for the giving up of his interests in that firm. At the same time that Richardson had given up his interests in the old firm, thereby creating, as it seems to me, a necessary inference that Hinck and Ould became the owners of the assets of that old firm, they made a contract of partnership with Erckens, by which they put into a new firm all the assets they had owned in the old, which the jury might have found had been given up to them on the same day; and Erckens put $100,000 in cash in the new firm upon the contract that no credit should be given, and in a business which did not require the issue of the notes of the partnership for any sum of money. It seems to me that if it should be found from these facts that the notes given on the 2d of January, 1894, had not been given in the course of the business of the new firm, but had been given for the purchase by two of the partners of the old firm of the interests of Richardson, another partner of that firm, no court could set aside the verdict; and therefore I think it is error to have ordered a verdict for the plaintiff upon this state of facts, and therefore I dissent from the conclusion of the court.

VAN BRUNT, P. J. I concur with Mr. Justice RUMSEY, upon the ground that, if the original notes were given for Richardson's interest in the old firm, there is no evidence that they were given with Erckens' knowledge or consent, and they were not given in the business of the new firm.