MARTIN HACKETT *et al.*, Respondents, *against* JAMES STANLEY, Impleaded with Moulton W. Gorham, Appellant.

(Decided April 4th, 1887.)

By the terms of an agreement between S. and G., in consideration of a loan of a certain sum of money by S. " for use in the business of heating, ventilating, etc.," for which G. gave S. his note with certain specified securities for its payment, and in further consideration of services of S. " in securing sales in said business, and for any further moneys he may, at his own option, advance for use in said business," G. agreed " to divide equally the yearly net profits of said business." It was also agreed " that said loan . . . is expressly for use in said business and for no other use whatsoever; " that any moneys either might advance for use in the business should draw interest; that G. should receive " as compensation for the management of said business," a yearly sum, " to be charged as an expense; " that G. should render a quarterly statement of the condition of the business, and make an annual division of profits; and that any commissions accruing to G. in the course of the business should be an asset, subject to such division. *Held*, that they were partners as to third parties in such business, and S. was liable upon contracts made by G. therein.

APPEAL from a judgment of the General Term of the City Court of New York, affirming a judgment of that court rendered upon a trial by the court without a jury. The appeal was argued at the General Term of this court in November, 1886, and the judgment was affirmed; but subsequently a re-argument was ordered at the March General Term, 1887.

The action was for materials and labor furnished and performed by plaintiffs in the fitting up an office for the use of defendants, as was alleged, in the business carried on by them as co-partners. There was no actual dispute as to the labor performed and materials furnished, or the value thereof, but the defendant, Stanley, denied that he was the co-partner of the defendant Gorham, and that any liability attached to him on account of said alleged co-partnership. It was proved on the trial that the defendants entered into the following agreement on or about the 23d day of January, 1885:

" This agreement, made the twenty-third day of January, 1885, between Moulton W. Gorham, of the city, county, and state of New York, party of the first part, and James Stanley, of the same city, county, and state, party of the second part, witnesseth:

" That for and in consideration of the loan of seven hundred and fifty ($750) dollars from the said party of the second part to the said party of the first part, for use in the business of heating, ventilating, etc., for which said party of the first part has given unto said party of the second part his note at two years, with interest, bearing date of January 14th, 1885, payment of which is secured by an assignment of said value in a certain $3,000 policy, number 36,888 in the Massachusetts Mutual Life Insurance Company, and also by a certain chattel mortgage bearing date January 23d, 1885, and in further consideration of services of said party of the second part in securing sales in said business, and for any further moneys he may, at his own option, advance for use in said business, the said party of

the first part agrees to divide equally the yearly net profits of said business.

" It is understood and agreed that said loan of seven hundred and fifty dollars is expressly for use in said business and for no other use whatsoever.

" It is further agreed between said parties of the first and second part that any moneys either may advance for use in said business, that said money shall draw interest at six per cent. from the date advanced till its withdrawal, — said withdrawal to be entirely at option of party advancing same.

" It is further agreed by the said party of the second part, that the said party of the first part shall receive as a compensation for the management of said business, the yearly sum of one thousand dollars, said compensation to be charged as an expense in said business.

" It is further agreed between said parties of the first and second part that said party of the first part shall render unto said party of the second part a quarterly statement of the condition of said business, and close the books of said business semi-annually on date February 1 and August 1, respectively; and also make an annual division of profits, as hereinbefore agreed, said fiscal year commencing February 1.

" It is further agreed by said party of the first part with the party of the second part that any commissions that may accrue to said party of the first part from sales or purchases made in the course of said business, same shall become, and it is understood and agreed, shall be an asset in said business, subject to said division hereinbefore mentioned.

" And it is further agreed between said party of the first and second part that all expenses for the necessary papers shall be charged as an expense in said business.

" In witness whereof, we have hereunto set our hands and seals this 23d day of January, 1885.

" M. W. GORHAM.  [L. S.]
" In presence of          " JAMES STANLEY."  [L. S.]
  " C. L. WALKER."

It was further proved that said agreement was in force between said defendants at the time of the performance of the labor and furnishing of the materials for which the plaintiffs sued in this action; and the main question to be determined upon this appeal was whether such agreement constitutes said defendants partners as to third parties.

*James G. Janeway* and *Sidney Ward*, for appellant.

*Thomas C. Ennever*, for respondents.

LARREMORE, Ch. J. — When this question was before us on the former appeal, I expressed the opinion that as the agreement of January 23d, 1885, provides that the $750 loaned by Stanley to Gorham was expressly for " use in the business " of heating, ventilating, etc., and for no other use whatsoever, the case was clearly within the authority of *Leggett* v. *Hyde* (56 N. Y. 279), and *Manhattan Brass Co.* v. *Sears* (45 N. Y. 797), and was distinguishable from several later cases in the Court of Appeals, where, under circumstances in some respects similar to those here involved, it was decided that a partnership relation did not exist. A further examination of the authorities referred to has only strengthened me in the conclusion before reached.

The opinion in the case of *Leggett* v. *Hyde* (*supra*), after a careful and discriminating examination of all the authorities upon the subject, re-affirms the doctrine of the old English case of *Waugh* v. *Carver* as the law of this state, to the effect that one who participates in the profits of a business as profits and not as a means of compensation for services, is a partner as to third persons, and is liable as such for debts. The facts in that case were closely analogous to those of the case at bar. In Judge FOLGER's language, " The prominent and important facts are that he (defendant) loaned the firm a sum of money to be employed as capital in its business, and that therefore he was entitled to have and demand from it one-third of the profits of its business every half year." The agreement under consideration has the

same essential feature. It is therein provided that "said loan of $750 is expressly for use in said business and for no other use whatsoever." It is not stipulated that said money so loaned shall be used for any specific purpose of said business or any isolated venture therein; it is to be employed generally in said business. That is, it is to constitute, or at least become a part of, the capital of such concern. The agreement furthermore provides for a quarterly statement of the condition of said business and an annual division of profits. There is no limitation or special definition of the word "profits" in the agreement. In fact, it is even provided that any commissions that may accrue to the party of the first part from sales or purchases made in the course of the business shall become an asset thereof, subject to the division of such profits therein before mentioned. The intention is therefore quite clearly expressed to make the terms "profits," as far as that agreement is concerned, as comprehensive as possible, so as to include all gains of the business from all sources. In some respects the case at bar is a stronger one for the plaintiffs than was *Leggett* v. *Hyde.* There the court inferred from circumstances that the money was to be used generally in the business; in the case at bar it is expressly stipulated that the so-called loan shall be used in such business, and in no other way. In *Leggett* v. *Hyde* the defendant "never interfered in the affairs of the concern nor exercised any control in the business." In the present case it appears that the defendant intended to render services "in securing sales in said business," and oral testimony offered by the plaintiff at the trial tended to show that he did take an active part in directing the affairs of the partnership.

Counsel for appellants contend that *Leggett* v. *Hyde* is distinguishable from the case at bar, because in that case the agreement expressly provided that the loan was to be returned in one year, "unless other arrangements were made," and in the present case the agreement provides that the money shall be repaid absolutely and in all events. I cannot see that such distinction, as a matter of fact, exists.

The absolute agreement to repay the money was just as clear in *Leggett* v. *Hyde* as in the case at bar, the mere addition of the words " unless other arrangements are made " not affecting this liability one way or the other. Persons are always privileged to refrain from keeping their agreements if " other arrangements are made," that is, if a former agreement is modified or rescinded by a subsequent one. But even if such distinction did exist, I do not think that it would have the effect for which appellants contend. As already stated, the essential elements of a co-partnership as far as the outside world is concerned, under the doctrine of *Leggett* v. *Hyde*, are a contribution to be used for the general purposes of the business and a participation in the profits as such.

Counsel for appellants claim that certain later cases distinguishing *Leggett* v. *Hyde*, operate to defeat the defendant Stanley's liability in this action. *Richardson* v. *Hughitt* (76 N. Y. 55) is cited. But in that case it is expressly stated in the opinion that the money loaned " did not constitute a portion of the capital of the firm and was not to go into its general business. . . . The amount of profits which were to be received by Hughitt was compensation for loaning the money, and not as the profits of a partner." In this case, specific advances of money were to be made upon specific security, so much on each wagon to be manufactured; and the defendant was to receive a sum proportioned to the profits, not of the general business of the firm to which the loan was made, but on the particular wagons upon which he made loans.

In *Eager* v. *Crawford* (76 N. Y. 97), also cited by appellants, it appears that the alleged participation in the profits was merely the agreement upon a mode of payment of the loan. The defendant in that case lent a certain sum of money to a third person, it being known that the same was to be used in the latter's business, and the agreement between them was in effect that a certain portion of the profits should be turned over to defendant to pay the interest and principal on such loan. " The court was right in

charging the jury in regard to the effect of the paper if it had been signed, and that it did not amount to a partnership, but was simply an agreement that Crawford should take one-half of what was received and apply it to the payment of Crawford's debt, and if it more than paid the interest, then the surplus should be applied upon the principal and extinguish it as far as it went."

*Burnett* v. *Snyder* (76 N. Y. 344) was a case in which there were five members of a partnership, and two of such five made an agreement with the defendant whereby, in consideration of certain money advanced by him, such two partners were to pay to defendant a certain proportion of their individual shares of the profits. The court in that case decided that a man would not be held a partner in a firm by reason of any agreement made with certain, but not all the members of it; that it was beyond the power of two members of a firm to take in an additional partner without the assent of all. In the opinion occurs the following language : " And doubtless if the firm of Strong, Platt & Company had been composed of Strong and Platt alone, it would have been sufficient to introduce Snyder (the defendant) into the firm and clothe him with the privilege and subject him to the liability of a partner." The most significant words in *Burnett* v. *Snyder* in the present examination are the following, in which Judge DANFORTH distinguishes the case from *Leggett* v. *Hyde* and other cases of like import, all of which " rest upon the rule . . . that he who takes a moiety of all the profits indefinitely, shall by operation of law be made liable to losses, if losses arise, upon the principle, that, by taking a part of the profits, he takes from the creditors a part of that fund which is the proper security to them for the payment of their debts."

In *Cassidy* v. *Hall* (97 N. Y. 159), advances were made to a corporation by the defendants, and such advances " were to be made only on such orders as the defendants approved ; and the most that can be claimed from it is that the defendants were the financial agents of the company to make advances and discount their paper." The advances

were all made on specific orders for property to be manufactured by the corporation and approved by the defendants. They were not generally interested in the affairs of the company, but only for a special purpose. The court refers to *Richardson* v. *Hughitt* (*supra*), and considers that it is analogous and controlling.

*Curry* v. *Fowler* (87 N. Y. 33) comes nearest to distinguishing the case at bar from *Leggett* v. *Hyde* in favor of the defendant of any of the cases cited, because in the instrument between the Messrs. McCormack and the defendant Fowler, it is provided in so many words that the McCormacks agree to share the profits of the purchase and buildings with Fowler, according to a plan therein stated, by which he should have one half of all the profits and be guaranteed at least $12,500. Still the court held that such agreement applied not to the general business of the parties, but only to a particular venture, thus recognizing in theory the distinction hereinbefore referred to. The court further said that the case was similar to *Richardson* v. *Hughitt*, because in both cases money was advanced or loaned, and security taken upon property, "in the case cited (*Richardson* v. *Hughitt*) upon personal property, and in the case at bar by a mortgage upon real estate." Furthermore, in *Curry* v. *Fowler* it was "not claimed that the defendant took any part or had anything to do with construction of the buildings or any connection with the contract, except by the advances of the money, and as that was all he did, there is no ground for claiming, that by reason of making a loan which related to a building contract he became a partner with the builders." In this case the agreement plainly shows that it was the intention that Mr. Stanley should take some active interest in said business. In *Curry* v. *Fowler* only a single definite loan of $50,000 was concerned. In the case at bar further advances were contemplated, presumably as the necessities of the business might require. The learned judge further says in *Curry* v. *Fowler*, "In neither of the cases (*Richardson* v. *Hughitt* and *Curry* v. *Fowler*), can it be urged on any reasonable ground

that there was an attempt to evade responsibility as a partner while reaping the advantages of the co-partnership." Upon a careful examination of the instrument before us as a whole, and considering the admitted facts, I cannot say the same thing of the case at bar. See also *Haas* v. *Roat* (26 Hun 632).

I have entered into this lengthy discussion of the cases because a doubt has been raised as to whether sufficiently careful consideration was given them on the other appeal, and because it is represented that this is a test case, upon the decision of which many others depend. The distinction which appellant's counsel attempts to draw is not in my judgment an essential or important one. As far as third persons are concerned, what difference can it make whether the loan is to be repaid absolutely or on a contingency? It is immaterial what arrangements the parties make *inter sese*. One partner may lend another capital, and take any proper security for its repayment. It is a common feature for partners to be allowed interest on the capital they respectively contribute. As between themselves, they may make any agreement not in itself illegal, and, on an accounting in equity, will be held to the same. But when the rights of creditors supervene, the question is, under *Waugh* v. *Carver* and *Leggett* v. *Hyde*, does an alleged partner, by agreeing to participate generally in the profits as profits, expect to diminish the fund from which creditors are to be paid? In all the cases cited by appellants the Court of Appeals held that this feature did not exist, and that the sharing of the profits was for a particular and specified purpose. Even in *Curry* v. *Fowler* the court was able to say that the loan applied solely to a certain piece of real estate and to security by mortgage upon such specific realty for its repayment. In the case at bar the " property in the profits " (*Richardson* v. *Hughitt, supra*) is general if language can make it so. The security taken for the alleged loan is, as far as the record shows, entirely personal between the parties, being, first, a life insurance policy, and second, a chattel mortgage upon property which it does not appear

has any connection with the business. There is no direct or necessary relation between the alleged loan and the security given. In *Curry* v. *Fowler*, as before stated, the court took into account the general appearance of the whole case, and said that no intent to reap the benefits of a partnership and escape its liabilities existed. In the case before us, I think no candid man could believe, after reading the agreement and considering the facts, that the appellant did not intend to reap all possible benefits of a partnership. If in any essential sense *Waugh* v. *Carver* and *Leggett* v. *Hyde* are still the law of this state, this appellant must be held as partner as to creditors.

The question whether plaintiffs originally gave credit to the firm, or to the defendant Gorham as an individual, is immaterial in view of the conclusion reached as to the partnership relation between the defendants. At the time of the making of the contract herein involved, and its performance by the plaintiffs, such co-partnership existed, although it was not known to plaintiffs. The defendant Stanley was a concealed partner in the firm, and it is elementary law that a concealed partner is liable upon contracts by or for the benefit of the firm when he is discovered (Story on Partnership § 139).

The judgment should be affirmed, with costs.

J. F. DALY and VAN HOESEN, JJ., concurred.

Judgment affirmed, with costs.