THOMAS HAYES, Appellant, *against* GEORGE F. VOGEL, Respondent.

(Decided April 2d, 1888.)

Plaintiff and defendant entered into a contract by which it was agreed that plaintiff should superintend the erection of four houses on defendant's land, giving the necessary time thereto, defendant to furnish all the capital required, and, upon sale of the houses when complete, to pay plaintiff one-third the net profits, if any; that proper books of account should be kept, and plaintiff, in case the venture resulted in a loss, should pay one-third of such loss; that defendant should not further encumber the property without plaintiff's consent, and should allow plaintiff $3 per week for incidental expenses, and $20 a week to be charged against his share of the profits, or, in case the venture resulted in a loss, to be repaid. *Held*, that such agreement constituted them partners, and that plaintiff, after the houses were completed, could compel a sale thereof, to the end that the partnership accounts might be adjusted and closed.

APPEAL from a judgment of this court entered upon a dismissal of the complaint at the trial.

The facts are stated in the opinion.

*Roe & Macklin,* for appellant.

*Edward C. Perkins,* for respondent.

J. F. DALY, J. — I think the agreement between the plaintiff and defendant creates a partnership between them. The defendant owned certain lots of land, and was about to erect four houses thereon. The plaintiff agrees to superintend the erection of the houses, and give the necessary time and attention thereto. The defendant agrees to furnish all the capital required therefor, in addition to the amount to be advanced to him upon a certain mortgage for future advances then upon the property; he agrees upon the sale of the houses when completed, to pay plaintiff one-third of the net profits, if any, arising from the sale. Proper books of

Hayes *v.* Vogel.

account shall be kept, to which each partner is to have access. If the venture results in a loss, the plaintiff is to pay defendant one-third of the net loss. The defendant agrees to devote all the moneys advanced upon the said mortgage to the construction of the houses, and will not further encumber the premises without the consent of plaintiff. Defendant is to provide plaintiff with office-room in defendant's factory until the completion of the houses ; to allow him $3 a week for incidental expenses to be charged as expenses as accounted for by plaintiff ; and to allow him $20 per week to be charged against his share of the profits, or, if the venture results in a loss, it is to be repaid by plaintiff to defendant.

Without regarding the use of the words " capital " and " venture," which occur in the agreement, and are appropriate to a co-partnership, and the fact that the parties, in the clause relating to the keeping of books, describe themselves as "partners," as conclusive upon the question, yet they are evidence of intention, and if there is nothing in the agreement to evince a purpose to the contrary, they should be considered as controlling. The share of profits which plaintiff was to receive was clearly not intended as compensation for services as servant, nor as payment for services as contractor in superintending the buildings ; for his obligations under the agreement to pay to defendant the same proportion of the loss, if the venture result in a loss, which he was to receive of the profits, if profits were earned, are conclusive upon that point. He was to share in the profits as profits, and in the losses. A community of interest was created in the profits. The provision in the contract upon which defendant lays much stress, that the defendant is to pay the plaintiff one-third of the profits upon the sale, is not significant ; that provision was rendered necessary by the fact that the defendant, being of record the owner in fee of the land upon which the houses were to be erected, would have to give title, and would necessarily receive the consideration money, and the division of profits could only be made by his paying to the plaintiff the latter's proportion.

The only difficulty in this case seems to grow out of the circumstance that when the agreement was entered into the defendant was the owner of the land. Had it been purchased under this agreement, and the title taken in his name, it would be hard to raise a question as to there being a partnership. What difference does it make that the defendant owned the land originally? He, in effect, contributes it to the concern; for the profits of the sale of the land as well as of the sale of the houses are to be divided, and so is the loss upon the sale of the land. There is a community of interest created in the property as well as in the profits, and an agreement to share in the risks of profit or loss upon the disposition of the property, and the parties undoubtedly became partners (*Pattison* v. *Blanchard*, 5 N. Y. 186; *Baldwin* v. *Burrows*, 47 N. Y. 199).

In this case it appears that all of the four houses have been completed; that two of the four have been sold, one contracted to be sold, and that one remains unsold and is occupied by defendant. All were completed on June 1st, 1887, and this action was begun about November 1st, 1887. Upon this state of facts the plaintiff is entitled to maintain this action in order to have a sale of the remaining house, to the end that the partnership accounts may be adjusted and closed. There is no right in defendant to resist a sale until he can find a purchaser on favorable terms. The contract between the parties evidently intends a sale of the houses as soon as completed. Besides, it is the right of the co-partner to have a sale. "In order to distribute the assets the only available means of division is generally to convert them first into money; and it has become a general rule that each partner or his representatives, unless there is an agreement to the contrary, has the right to insist upon a sale of the assets, whether they are real or personal in character, in order to ascertain their value" (2 Bates Partner. § 974).

Where one party was to furnish money to buy land in partnership with the other, and the title was taken in the name of the latter, and, the value being depreciated, the former sought a sale, it was held that he had the right to a sale to

ascertain whether the other was indebted to him. Where consent to sell the premises cannot be procured from the party, the only regular course is to file a bill and ask for a sale (*Olcott* v. *Wing*, 4 McLean 15).

The judgment should be reversed and a new trial ordered, with costs to plaintiff.

VAN HOESEN, J., concurred.

Judgment reversed and new trial ordered, with costs.