JOHN L. MACAULEY, as Surviving Partner, Appellant, *v.* JOSEPH R. PALMER *et al.*, Respondents.

*Supreme Court, First Department, General Term, July 9, 1888.*

1. *Partnership. Single enterprise.*—A different rule is to be applied to the case of partners for a single enterprise, in considering their subsequent relations and rights as to each other and to third parties, from that which would apply in case a general partnership had been established. See note at end of case.
2. *Same.*—In such case, they can not bind each other, after the particular adventure ends, by any subsequent action.
3. *Same. Liability.*—Where a creditor directed such a firm to deposit, and it did deposit, to his order, with a banker, moneys received for goods sold for him on commission, and afterwards on direction of one of the former members, the banker repaid the money to the purchaser, the other member is not liable to the creditor for the act of his former partner.
4. *Payment. Presumption of.*—Where twenty years have elapsed since the cause of action accrued, there arises, in the absence of some positive act of unequivocal recognition, like part payment or a written admission, or at least a clear and well-defined parol promissory admission intelligently made, an absolute presumption of payment, entirely independent of the statute of limitations and notwithstanding the non-residence of the alleged debtor.
5. *Evidence. Hearsay.*—A letter written by a third party to plaintiff is a mere declaration and not binding upon defendants ; nor will the examination of the plaintiff by the defendants in reference to it, make it admissible against them.

Appeal from a judgment entered on a dismissal of the complaint.

*L. Laflin Kellogg*, for appellant.

*Burrill, Zabriskie & Burrill,* for respondents.

VAN BRUNT, P. J.—The plaintiff offered proof tending to show that he and one James A. Armstrong, now deceased, were copartners in the years 1863 and 1864 in Texas, while the same was in possession of the rebels during the late war, in buying cotton and getting it through the rebel lines and selling the same either in Mexican or other markets; that 167 bales of cotton, the proceeds of which are the basis of this suit, were purchased by the plaintiff's firm in October, 1863; that some time prior to the 28th of January, 1864, James A. Macauley, the deceased partner, made an arrangement with the defendants, Palmer & Kingsbury, for the sale of this cotton, and wrote a letter to them stating the terms of the arrangement, and directing them to pay over the proceeds of any sale to Mr. Jose San Roman, a banker, at Brownsville, Texas. On the 5th of March, 1864, another letter was written by Mr. Macauley to Mr. Palmer individually, directing him to deposit the money in case the matter should be closed with San Roman, and in that event to send him a statement and duplicate receipt.

The cotton in question was sold by Palmer & Kingsbury and the proceeds received by them, and $10,670 (being the balance left after the deductions which they were authorized to make) were deposited by them with Jose San Roman.

There is evidence upon the part of the defendants, namely, that of Palmer, that advices of this deposit were sent to Mr. Macauley, who, at this time, thought it safer to reside in Havana than in Texas. There is no proof, however, of the receipt of such advices, except such as may be inferred from an apparent knowledge on the part of Macauley, that the

$10,670 had been deposited by Palmer & Kingsbury with San Roman according to his instructions.

It further appears from the evidence offered upon the part of the plaintiff that a few days after the deposit of this money with San Roman, and after Palmer had left Brownsville, Kingsbury, accompanied by a guard of Federal soldiers, came to the house of San Roman, and that Kingsbury directed San Roman to deliver the money which he, Kingsbury & Palmer had deposited with him to the purchasers; and that the money was returned in the same packages in which it was received.

There was, also, evidence tending to prove that at this time Kingsbury was under arrest, and that such arrangement was made after his arrest, and it was by means of the surrender of this money that he procured his release. And it further appears that neither Palmer nor Kingsbury ever retained a dollar of the proceeds thus deposited and returned.

In July, 1885, this action was commenced against the defendant Palmer to recover the proceeds of said bales of cotton. The answer of the defendant alleged payment, set up several statutes of limitations, and also alleged that the cotton which the defendants were employed to sell was procured by the plaintiffs for the purpose of selling the same in aid of the rebellion.

At the termination of the plaintiffs, case a motion was made to dismiss the complaint which motion was granted and an exception duly taken.

There seems to have been sufficient evidence to justify the submission to the jury of the question of the partnership of the plaintiffs and that if any action could be maintained at all against these defendants, it might be instituted by the plaintiff as surviving partner.

But there seem to be two fatal objections to any recovery upon the part of the plaintiff. The first is that there is no evidence, but that Palmer and Kingsbury were copartners simply for this enterprise and that when this sale was con-

cluded, and an accounting made, there is no presumption to be indulged in from the nature of this transaction that they had any further joint interest, and therefore an entirely different rule is to be applied in considering their relations and their rights as to each other and as to third parties from that which would apply in case a general partnership had been established.

. Having been proved to be partners in this particular adventure, when this adventure ended that partnership necessarily ceased. Therefore, when the cotton had been sold and the proceeds belonging to the plaintiff's firm had been deposited as directed with the banker at Brownsville, then, as far as the evidence in this case shows, it would appear that the adventure in which Palmer and Kingsbury had been engaged and their right to bind each other by any subsequent action terminated.

Therefore the attempted surrender or giving back of the purchase-money of this cotton by Kingsbury to the purchasers thereof was an act done by him after the termination of the joint adventure in which he had no right whatever to bind his former partner.

It further appears that this act was manifestly done not in connection with the business of the firm of which he was a member, but was for purpose of releasing himself individually from an arrest to which he had been subjected.

Under these circumstances there is no principle upon which his former partner, who had performed all the duties which were required under his contract with the plaintiffs could be held liable for this unauthorized action on his part.

Whatever wrongs had been suffered by the plaintiff was because of the unauthorized action of his own agent, the banker with whom the money had been deposited. After this deposit had been made, Palmer and Kingsbury had parted with all control of it and it became the property of the plaintiff, even if it did not appear upon the books of the banker to have been credited to his account. The plaint-

iff's firm in designating the depositary for this money, ran all the risk as to what should become of the money after such deposit had been made. The defendant's firm was not in any way responsible for what became of the money thereafter, as a firm. It was in connection with no partnership transaction that it was withdrawn, and if the banker paid it over on Kingsbury's direction he was parting with money to Kingsbury to which the latter had no title and of which the plaintiff's firm was the owner. It was a wrong done by the banker to the plaintiff's firm, if any wrongful or illegal act for which anybody could be liable was done by the paying over of the money under the circumstances related by the witnesses.

In fact this very point is asserted by the plaintiff as one of the grounds of liability of the defendant, that is that the defendants were not relieved from their liability for the entire proceeds by the repayment to the purchasers of the cotton, and are answerable to the plaintiff for the full amount.

Applying this principle to the case of the repayment by the banker to Kingsbury, it is clear that the banker violated his duty in repaying to Kingsbury the money which he had received as the agent of Macauley, and which was to have been paid over to him. Certainly, Palmer & Kingsbury are not to be held responsible for the wrongful act of the plaintiff's agent simply because one of the former firm consented to this payment of the money.

This act of consent on the part of Kingsbury as already stated was outside of the business of the copartnership, and by which he could not bind his copartner except by his consent.

There is another ground upon which the ruling of the court may be sustained, and that is there was a presumption of payment arising from the lapse of time. This presumption is entirely independent of the statute of limitations.

It arises, although the statute does not apply by reason of the non-residence of the alleged debtor.

In Bean v. Tonnele (94 N. Y. 384) and Lyon v. Adde (63 Barb. 89), this rule of law is expressly recognized; and it is held that in the case of an obligation which could be extinguished by payment, there is an absolute presumption of payment after the lapse of twenty years. It is a presumption of law and can be rebutted only by some positive act of unequivocal recognition like part payment or a written admission, or, at least, a clear and well-defined parol promissory admission intelligently made within a period of twenty years.

It appears from the evidence that twenty-one years had elapsed since the cause of action if any which the plaintiff had against these defendants arose, and there being no recognition of the claim, such as is required by the rule above stated, the presumption of payment has become absolute and the court was justified upon this ground if for no other in dismissing the complaint.

Our attention is called to an exception to the admission of evidence to which it is not necessary to call special attention in view of the rules of law which we think are applicable to the case at bar.

The admission in evidence of the war relics found in the various departments at Washington without any further identification than the fact of their being on file in this department may have been error because, notwithstanding the broad statement of the act, we do not think that it was the intention to make a copy of a paper evidence upon slighter proof than would have been required had the original been present in court. This error, however, in no way affects the questions upon which we have thought proper to dispose of this appeal, and consequently the plaintiff suffered no injury by their reception.

The claim that the exclusion of the letter sent to Macauley by San Roman (Ex. G.) was error can be sustained,

because it was a mere declaration of a third party whose declaration was not in any respect binding upon the defendants. The examination of Mr. Macauley in reference to the letter by the defendants did not make it competent. But even if the letter had been admitted, it in no way changed the relations between these parties as the claim that the letters state that the money was deposited with San Roman under certain conditions without any proof as to what those conditions were; affords no proof that there were any conditions attached to the deposit inconsistent with the instructions which they had received from Macauley.

Upon the whole case, therefore, we are of opinion that the complaint was properly dismissed, and the judgment should be affirmed, with costs.

DANIELS and BRADY, JJ., concur.

---

NOTE ON " WHO ARE PARTNERS."

*Between themselves.*—In Farr *v.* Morrill, 53 Hun, 31, the defendant invented new and important improvements in saw-sets and entered into an agreement with Farr. The agreement recited that a patent had been allowed for the improvements and that defendant was desirous of having saw-sets made in sufficient quantities to keep the market fully supplied at all times, and, therefore assigned to Farr one undivided half of all his rights to said patent and improvements. Farr agreed to furnish funds necessary to take out patents and manufacture, and to keep correct accounts of all receipts and disbursements. Neither party was to have the independent right to manufacture or dispose of such improvements without the written consent of the other. The net profits was to be divided between them share and share alike. Nothing was said about the losses. And it was held that they became partners as between themselves as well as to all the world.

In Campbell *v.* Sherman, 55 Hun, 609, plaintiff's testator and the defendants entered into a joint enterprise for publishing a certain work. One of the defendants was to furnish the funds for publishing, and the other parties to devote their time and services, in consideration of receiving a certain share of the net profits arising from the publication. And it was held that the joint enterprise, thus established between the parties had all the necessary elements of a partnership, a test of which is community of profits, a specific interest in the profits *as profits* in contradistinction to a stimulated portion of the profits as a compensation for services.

Note on " Who are Partners."

It is possible for two persons to be joint owners of property, and yet not partners. Sheehan *v.* Fleetham, 58 Hun, 605. But, when one carrying on a business of buying and selling, assigns half of the property, including accounts, to another, and goes on with the buying and selling as before with the knowledge of the assignee, there is quite strong evidence from which the jury may infer that the assignee consents to share in the business as a partner. Still more, if the assignee himself had previously been a half owner of the business. Id.

In Demorest *v.* Koch, 58 Supr. 583, a party agreed to purchase property and construct buildings thereon. Another was to advance a certain amount. One of the houses, on completion was to be conveyed to the latter, or, at his option, one half of the net proceeds of sale of the houses was to be paid to him in case a sale is determined upon. Any profits, which may be realized by the sale of said buildings, were to be divided equally between them. And it was held that the agreement was merely an executory contract of sale, and does not make the parties partners.

An agreement made by one person to advance money for the capital, or to be used in the business of another, the profit and loss of which are to be divided between the parties, is sufficient to create a partnership. Galway *v.* Nordlinger, Sup. Ct. Jan. 1889; Sage *v.* Sherman, 2 N. Y. 417. It contains all the attributes required for that purpose by the authorities. Id.

Where the business is carried on in the name of an individual alone, and is unknown to the creditor as a partnership, the law requires him, before he can recover in an action, to establish the fact, to a reasonable degree of certainty that a partnership does exist between the parties. Galway *v.* Nordlinger, *ante;* Gernon *v.* White, 90 N. Y. 631. If he is a partner in law, and it is subsequently discovered, he can be held liable. The fact that the creditor in his dealings with the individual, supposed and believed that they were with him as an individual only, when in fact they were a part of the partnership business carried on by the parties, will not relieve the unknown partner from liability for the indebtedness as an obligation of the firm. Galway *v.* Nordlinger, *ante.*

In Sage *v.* Sherman, *ante,* a joint fund was to be provided and expended in the purchase of land. They were to be taken, and might be sold, jointly for all the parties. There was to be an eventual division of the fund, and all were to participate in the profit and loss which might result from the undertaking. The parties under the agreement, were not to be simply tenants in common with the ordinary attributes of that relation. Their engagements was not confined to a single purchase of property, in which they were primarily each to have separate interests, and where each might sell his share for his individual benefit. They were to be engaged in a general undertaking for the successive sale and purchase of real estate and to share in the profit and loss resulting from their dealings. It was held, in this case, that they were, beyond all doubt, partners. A mere community of interest in land does not make men partners, any more than a mere community of interest in personal property. There must be some joint adven-

ture, and an agreement to share in the profits and loss of the undertaking. Id; Porter *v.* McClure, 15 Wend. 187.

In Clift *v.* Barrow, 108 N. Y. 187, Pardee and Clift entered into a written agreement to the effect that Pardee might use the name of Clift in the firm of Pardee & Co. in the business of Banking. Clift was not to participate in the profits or losses, except that he was to have for his share of the profits ten per cent. per annum on all the deposits made by him in the office. Pardee covenanted to keep Clift harmless from all losses, debts, dues or demands that may come against said firm, and, upon dissolution of the firm to return to Clift all of his deposits, with the ten per cent. per annum. And it was held that the agreement, when acted upon, formed a valid partnership between the parties. The agreement to pay the percentage was held not to be absolute, but conditional upon there being profits to that amount from which the payments could be made, and whatever sum Clift became entitled to under it was payable to him as profits. He was held to become liable for losses or debts from the moment the agreement was signed and business done under it. The covenant against losses and debts was held not to prevent such liability, but merely to be one of indemnity.

In Sims *v.* Vyse, 47 Hun, 633, an action was brought to recover a sum alleged to have been loaned by the plaintiff to the defendant, to be used in joint stock speculations. The profits, if any, were to be divided equally between the parties, and the principal sum returned to the plaintiff. And it was held that such an agreement made the parties to it co-partners.

In Hayes *v.* Vogel, 14 Daly 486, the parties entered into an agreement, whereby the plaintiff agreed to superintend the building of four houses which the defendant was about to erect on land owned by him. The defendant was to furnish all capital therefore, in addition to an amount to be advanced to him upon a certain mortgage for future advances then on the property. He was to pay to the plaintiff, upon the sale of the houses, when completed, one-third of the net profits, if any, arising from the sale. The plaintiff agreed to pay the defendant, in event of loss, one-third of the net loss. There were further provisions which bound the defendant to pay the plaintiff a sum weekly, to be charged against the plaintiff's share of the profits, and returned in case of loss. And it was held that the agreement created a partnership between the parties. The share of profits, which plaintiff was to receive, was clearly not intended as compensation for services as servant, nor as payment for services as contractor in superintending the building. He was to share in the profits, *as profits*, and in the losses. A community of interests was created in the profits and in the property, and an agreement to share in the risk of profits or loss upon the disposition of the property. This was undoubtedly sufficient to make them partners. Id. Patterson *v.* Blanchard, 5 N. Y. 186; Baldwin *v.* Burrows, 47 Id. 199.

To constitute a partnership, there must be a reciprocal agreement, of the parties, not only to unite their stock, but to share in the risk of profits or loss, by the disposition to be made of it. Baldwin *v.* Burrows, *ante.* Where several parties agree to purchase personal property in the name of one of

them, and to take aliquot shares of the purchase without agreeing to resell jointly, there is no partnership. Id.; Holmes v. United Ins. Co., 2 John. Cas. 331; Post v. Kimberley, 9 John. 491.

The undeclared intentions of several parties finally to unite with each other in the disposition of the property, is not sufficient to constitute them partners. Id. Though goods are bought by several, under an agreement to hold in aliquot shares, but with the intention of subsequently forming a co-partnership in respect to them, yet, until the partnership agreement is actually made, the purchasers are not co-partners, but only tenants in common. Id. There is still a " locus penitentiæ." The partnership may never be formed. Either party may withdraw before the agreement is consummated. Neither of them before that time, has power to bind the other by his contracts.

A partnership is defined to be a contract of two or more persons, to place their money, effects, labor, or skill, or some or all of it, in lawful commerce or business, and divide the profits and bear the loss in certain proportions. Pattison v. Blanchard, ante, 3 Kents Com. 23. To constitute a partnership in a single concern, there must be a joint undertaking to share in the profit and loss. Id. Bostwick v. Champion, 18 Wend. 580.

To constitute persons partners as between themselves, there must be an interest in the profits, as profits. Each party must by the agreement participate in some way in the losses as well as the profits. An agreement to divide the gross earnings alone, does not constitute the parties to it partners. Id.

In this case, several persons were engaged in running a line of stages. By the agreement between them, one was to run at his own expense a certain portion of the route, and the others, in like manner, the residue. Each was authorized to receive fare from passengers over the whole or any part of the route. The parties were to settle monthly, and the fare so received was to be divided between them in proportion to the distance which each transported the passengers. The party who was found to have received more than his share, was to pay over to the other the balance on each monthly settlement. And it was held that this did not create a partnership between the parties.

Where one's interest in the profits is clearly as compensation for services rendered, this participation, in Edwards v. Dooley, 47 Hun, 635, was held not to constitute a co-partnership.

In this case, an agreement was made for a salary of $1200 a year, but afterwards it was changed to a certain percentage of the profits. These profits were to be arrived at by calculating interest upon the capital employed and the expenses of the enterprise. And his compensation was to consist of a certain share of the profits thus ascertained. Under such circumstances, his interest in the profits was clearly a mere compensation for services rendered. And he did not become a partner by reason of the arrangement.

Parties, who have a community of interest in the property, and are

entitled to share in the profits and bound to bear the losses resulting from the business, are co-partners. Nat. Union Bank *v.* Landon, 66 Barb. 189.

In McGovorn *v.* Robertson, 40 Hun, 166, an action was brought to recover the value of goods, wares and merchandise, for which the defendants were claimed to be liable as partners. The defendant Robertson entered into a written agreement with the other defendants to put a stock of goods, worth at least $3,000, in her husband's store. The other defendants agreed to endorse her paper to the amount of $3,000. This sum was to go into the business. The latter defendants were to have an interest at all times in the goods in the store to the amount of their endorsement. They were to be subject to no liability except such endorsement. An invoice was to be taken at the end of the year in the presence of two of the defendants. They were to be paid one-third of the net profits, if any, for their endorsement and general interest in the business. At any time during the year a majority of the defendants might require an invoice of the stock of goods to be taken, and if any considerable loss had been sustained, and they so demanded, the defendant Robertson was to turn over a sufficient amount of the goods to secure them against liability for their endorsement, or was to cause the paper to be cancelled. And it was held that the agreement did not make the other defendants partners with defendant Robertson as between themselves or as to third parties.

No joint ownership in the stock of goods is given, either expressly or impliedly to them. They are only given an interest in the goods in the store to the amount of their endorsement, but no right to control, manage or conduct the business.

An agreement, by which one party was to furnish the capital, and the other to give so much of his time and labor as was necessary in planting and gathering oysters for the market, and the profits of each venture, after deducting expenses, was to be divided equally between them, was held, in Housman *v.* Weir, 15 Abb N. C. 415, not to make them partners, but merely parties to a joint venture.

In De Cordova *v.* Powter, 44 Hun, 622, the defendant, Powter, had acted as the manager and agent of the business of the Pedro Cayo Co. on behalf of the defendant Habich. An agreement was made that so long as he shall continue to devote his time and attention to the business, he and after his decease, his representatives will be allowed, as and for his remuneration and in full of all claims for services, including past services, an equal half part of the net profits to arise from the business during the subsistence of the lease held by her. And it was held that, under this agreement, the defendant Powter was made the manager of the business, but was not a partner.

Where a party takes and holds the title to property under an agreement to hold it for an advance in its market price, and upon its sale, to divide the proceeds over and above the investment and expenses between him and other parties, and it was bought and was to be sold for their joint benefit, a partnership in the enterprise is established. Guibert *v.* Saunders, Sup. Ct. June, 1887.

An agreement, by which one employed to purchase grain is to receive for his services one-half the profits realized, does not, constitute him a partner so as to make him a necessary party plaintiff in an action brought by his employer upon a contract in reference to the grain so purchased. Lewis v. Greider, 51 N. Y. 231.

In Walker v. Spencer, 86 N. Y. 162, a party entered into an agreement with defendant, whereby they agreed to manufacture and sell as general agents for him, a medical compound, the recipe whereof was known by him, for a term of years, for a commission of fifty per cent. net proceeds of all sales. The defendants agreed to account for all proceeds, less expenses. After a specified sum was paid to him, the recipe and process of manufacturing should belong jointly to the parties. The stipulated sum was paid. In an action brought for an accounting, it was held that, as between themselves, the parties were not partners.

A person may, by the agreement between the parties, be entitled to share the profits of the business without constituting him a partner. In such case, it must appear that he is to receive a share of the profits as a compensation for his labor and services. Munro v. Whitman, 8 Hun, 553. The whole foundation, on which the principle rests, is, that there was no partnership *inter sese* intended by the party. The agent is not clothed with the general powers, rights and duties of a partner. The share of profits given to him is not designed to make him a partner, either in the capital stock or the profits, but to excite his diligence and secure his personal skill as an agent of the concern, and is contemplated merely as a compensation therefor. Id. A lawful agreement may be made that one of the partners should bear a less porportion, or even no part, of the losses. Id.

In the case of Lamb v. Grover, 47 Barb. 317, Lamb agreed to furnish groceries to sell, and to pay the rent of the store in which the goods were to be sold. Adams agreed to sell the groceries for one-half of the profits on the sale of the goods. The referee found that the share of profits to be received by Adams was in payment and in compensation for the services rendered by him in the business. In such case, there was no partnership created by the agreement.

The doctrine that persons can not be partners as between themselves, unless they agree to participate in the losses, is founded on the language of the judges in many cases, and, in some, is the apparent ground of the decision. But the result of all the cases, and the modern doctrine, is, that the exemption from losses is a fact which, though not conclusive, is strong evidence that the party thus exempted is not actual partner ; and, taken in conjunction with other circumstances, may clearly show that fact. Munro v. Whitman, *ante;* Vanderburgh v. Hull, 20 Wend. 70 ; Burckle v. Eckhart, 1 Denio, 337; 3 N. Y. 132.

It was held in Moore v. Huntington, 14 Hun, 425, that a partnership in profits may exist without including title to the stock out of which said profits arise, if such is the agreement of the parties. They do not, in such case, become partners, as between themselves, in the possession and owner-

ship of the property. It is only a mode adopted for payment of services rendered and material used in adding value to the property. Id.

In Eldridge v. Troost, 6 Robt. 518, it was held that, to constitute a general partnership, nothing more is necessary than than the parties agree to carry on or conduct a specified business, and to share in its profits and losses. The business may be of a general nature, or it may relate and be confined to certain designated transactions. In either case, the partnership becomes general. Id. In this case a firm in New York and another in Calcutta, agreed to carry on business between those cities, upon joint account. The particular kind of business was the shipment of goods from Calcutta for sale in New York. The agreement for the mode of payment, the manner of sale, the division of profits and the sharing of losses were designated. No period of relation was prescribed, and there was no limit to the amount and number of shipments. And it was held that under this agreement, the parties became general partners.

Where certain creditors agree with each other to advance the moneys necessary to continue and carry on the business of their debtor, for their own profit, to contribute the funds necessary for the purchase of stock for the business in equal proportions, and to divide the profits equally and to bear the losses of the business in the same proportion, a co-partnership relation in respect to such enterprise is established between the parties. Wills v. Simminds, 51 How. 48. A joint contribution of capital in money, property and services by the respective parties, a joint participation in the profits and in bearing the losses, are incidents which characterize a partnership and indicate a co-partnership relation between the contracting parties. Id. But in the case of Cox v. Hickman, 8 House of Lord's Cases, 312, an agreement between the debtor, his trustees and creditors, substantially for the continuance of the business was held not to constitute a partnership. In that case, there was no agreement, on the part of the creditors for a joint contribution of moneys for the purchase of stock to be used; nor did the net profit belong absolutely to the parties who contributed moneys for the purchase of stock. The profits, or income belonged to the debtor.

*As to third persons.* The opinion in the case of Legett v. Hyde, 56 N. Y. 279, after a careful and discriminating examination of all the authorities upon the subject, reaffirms the doctrine of the old English case of Waugh v. Carver, as the law of this state, to the effect that one who participates in the profits of business as profits, and not as a means of compensation for services, is a partner as to third persons, and is liable as such for the firm debts. Hackett v. Stanley, 14 Daly, 210.

In this case, defendants entered into an agreement by which, in consideration of the loan of certain moneys from one to the other party for use in the business, etc., which sum it was stated was secured by the note of the borrower by the assignment of a policy of insurance and by chattel mortgages, and in further consideration of the services of the lender in securing sales, and any other sums he might at his option advance, the borrower agreed to divide equally with him the net profits of the business.

17

The said loan was expressly for use in the business, and for no other purpose. It was agreed that any money either might advance should draw interest and might be withdrawn at his option. The borrower was to be allowed $1,000 for his services in managing the business and to make quarterly statements of its condition. The business was to be carried on in the name of the borrower. And it was held that they were partners as to third parties in such business. The money so loaned was not to be used for any specific purpose of said business or any isolated venture therein; but was to be employed generally in said business. It was to constitute, or, at least, become a part of, the capital of such concern. Nor was there any limitation or special definition of the word " profits " in the agreement.´ It was even provided that any commissions that might accrue to the party of the first part from sales or purchases made in the course of the business should become an asset therefor subject to the division of such profits. The intention was to make the term " profits " as comprehensive as possible so as to include all gains of the business from all sources. The party intended to render services in securing sales in said business, and did take an active part in directing its affairs. The essential elements of a co-partnership, as far as the outside world is concerned, are a contribution to be used for the general purpose of the business and a participation in the profits as such.

In Richardson *v.* Hughett, 76 N. Y. 55, it was expressly stated in the opinion that the money loaned did not constitute a portion of the capital of the firm and was not to go into its general business ; and that the amount of profits, which was to be received by defendant, was the compensation for loaning the money, and not as the profits of a partner.

In Eager *v.* Crawford, 76 N. Y. 97, the alleged participation in the profits was merely the agreement upon a mode of payment of the loan. The defendant loaned a sum of money to a third person. It was known that the same was to be used in the latter's business. The agreement between them was in effect that a certain portion of the profits should be turned over to defendant to pay the interest and principal on such loan. And it was rightly held that it did not amount to a partnership, but was simply an agreement that the lender should take one-half of what was received and apply it to the payment of his claim, and if it more than paid the interest, then the surplus should be applied upon the principal and extinguish it as far as it went.

In Burnett *v.* Snyder, 76 N. Y. 344, it was held that he, who takes a moiety of all the profits indefinitely, shall, by operation of law be made liable to losses, if any arise, upon the principal, that, by taking a part of the profits, he takes from the creditors a part of the fund, which is the proper security to them for the payment of their debt. In Cassidy *v.* Hall, 97 N. Y. 159, advances were made to a corporation by the defendants. Such advances were to be made only on such orders as the defendants approved. They were the financial agents of the company to make advances and discount their paper. The advances were all made in this way. The defendants were not generally interested in the affairs of the company but only

for a special purpose.  And it was held that they were not liable as partners.
In Curry v. Fowler, the Court held that the  agreement between the parties
applied, not to the general business, but only to a particular venture.  The
money was advanced or loaned, and security taken. by a mortgage upon
real estate.  The defendant did not take any part or have any thing to do
with the construction of the building or any connection with the contract,
except by the advances of money.  And it was held that he did not become
a partner with the builders.  In Richardson v. Hughe, *ante*, and Curry v.
Fowler, *ante*, there was no attempt to evade responsibility as a partner,
while reaping the advantages of the co-partnership.

As far as third persons are concerned, it can make no difference
whether the loan is to be repaid absolutely or on a contingency.  It is
immaterial what arrangements the parties make *inter sese*.  One partner
may lend another capital, and take any proper security for its repayment.
It is a common feature for partners to be allowed interest on the capital
they respectively contribute.  As between themselves, they may make any
agreement not in itself illegal.  Hackett v. Stanley, *ante*.  But when the
rights of creditors supervene, the question arises, does an alleged partner,
by agreeing to participate generally in the profits, as profits, expect to
diminish the fund from which creditors are to be paid ?  In the cases of
Richardson v. Hughe *ante;* Eager v. Crawford, *ante;* Burnett  v. Snyder,
*ante ;* Cassidy v. Hall, *ante ;* Curry v. Fowler, *ante*, the court of appeals
held that this feature did not exist, and that the sharing of the profits was
for a particular and specified purpose.  Even in Curry v. Fowler, *ante*.
The court was able to say that the loan applied solely to a certain piece of
real estate and to security by mortgage upon such specific reality for its
repayment.

The application of the rule that " participation in profits " renders their
recipient a partner in the business from which profits are derived, as to
third persons, has been somewhat restricted by modern decisions.  Hackett
v. Stanley, 115 N. Y. 625.  But the division of profits must still be con-
sidered the most important element in all contracts by which the. true
relation of parties to a business is to be determined.  This rule is founded
in strict justice and sound policy. .There can be no injustice in imposing
upon those, who contract to receive the fruits of an adventure, a liability
for credits contracted in its aid, and which are essential to its successful
conduct and prosecution.  Id.  This liability does not, and ought not to,
depend upon the intention of the parties in making their contract to shield
themselves from liability.  But it depends upon the ground that it is
against public policy to permit persons to prosecute an enterprise which,
however successful it may for a time appear to be, is sure in the end to
result in advantage to its secret promoters alone, and the ruin and disaster
of its creditors and others connected with it.  Id.; Chase v. Barrett, 4
Paige, 159.  As expected profits are the motive which induces the prosecu-
tion of all commercial and business enterprises, their accumulation and
retention in business are essential to success.  If persons are permitted,
by secret agreement, to appropriate them to their own use and throw the

liabilities, incurred in producing them, upon those who receive only a portion of the benefits, not only is a door opened to the perpetration of frauds, but such frauds are rendered inevitable. Id.

Exceptions to this rule are found in cases where a share in profits is contracted to be paid, as a measure of compensation to employees for services rendered in the business, or for the use of money loaned in aid of the enterprise. But when the agreement extends beyond this and provides for a proprietary interest in the profits as a compensation for money advanced and time and services bestowed, as a principal in its prosecution, the rule still requires such party to be considered as a partner.

The court in Leggett v. Hyde, *ante*, approved the rule laid down in 3 Kent's Com. 25, that the test of partnership is a community of profit ; a specific interest in the profits, *as profits*, in contradistinction to a stipulated portion of the profits as a compensation for services. And it said that the courts of this state have always adhered to this doctrine and applied or recognized it in the cases coming before them.

The doctrine that persons may be partners as to third persons, though not so as between themselves, and though the contract of partnership contains express provision repudiating such a relation, has been too firmly established in this state, by repeated decisions, to be now disregarded by its courts. Hackett v. Stanley, *ante*. The case of Richardson v. Hughe ; Burnett v. Snyder ; Eager v. Crawford ; Curry v. Fowler ; and Cassidy v. Hall, *ante*, do not overrule this doctrine. They were all cases distinguished by peculiar circumstances taking them out of the operation of the general rule. It cannot be denied that a loan may be made to a firm on conditions by which the lenders may secure a limited or qualified interest in certain profits of the firm, without making them partners in its general business.

Persons having a proprietary interest in a business and in its profits are liable, as partners, to creditors. Macgovern v. Robertson, 116 N. Y. 61 ; Manhattan B. & M. Co. v. Sears, 45 Id. 797 ; Leggett v Hyde, *ante ;* Mason v. Partridge, 4 Hun, 621 ; aff'd 66 N. Y. 633 ; Burnett v. Snyder, *ante ;* Ontario Bank v. Hennessey, 48 Id. 545 ; Haas v. Root, 16 Hun, 526 ; 26 Id. 632.

In the case first cited above, it was stipulated in the contract that the parties should do what they reasonably could to make the business a success, that the defendants should have an interest in the store equal to the amount of their endorsement, and that at the end of a year an inventory should be taken, the net profits ascertained and one-third of them paid to the defendants, in consideration of their said endorsement and their general interest in the business. Each party had a right to require that the assets of the business should be applied in payment of the debts of the business, the sums contributed by each, and the sum due each for profits earned. And it was held that the parties had a proprietary interest in the business and its profits, and were liable for the amount due creditors. The cases holding that a person entitled to a share of the profits of a business in payment for services rendered or as a compensation for money advanced, cannot be charged as partners, do not apply to such circumstances. A

distinction between the rights and liability of persons so situated, and the rights and liabilities of persons having a proprietary interest in the assets and profits of the business, has been clearly drawn by the decided cases.

A stipulation in the contract that some of the parties should not be liable beyond their endorsements, limits their liability as between the parties thereto, but does not exempt them from liability for a creditor's claim. Id.

In Wolf v. Strahl, 54 Hun, 636, it was held that a statement made by a party that he was going into partnership with another person, to whom goods are afterward sold by the party to whom such statement was made is not sufficient to bind him as a partner for the price of such goods.

Contribution of capital as such in the joint adventure and participation in and division of profits as such, as distinguished from compensation for money loaned ; authority to enter into and make contracts in furtherance of the common objects ; active participation in and direction of the affairs of the adventure, authorization of obligations and payment thereof by one party who is to receive a share of the profits as such, and the holding and owning the legal title and directing the employment and purchase of materials to carry out the enterprise so as to make profits for division make such person a partner. Keogh v. Minrath, 56 Hun, 640.

Where a party advances money or incurs obligations or performs services in behalf of the firm and is to receive, as compensation therefor, a percentage of the profits, he is not necessarily a partner. In such cases, there is no ownership in the results of the common enterprise. There is only an obligation upon the part of the firm to pay as a debt the compensation agreed upon for the money loaned or the services rendered. Id. It is well settled that, when a party is only interested in the profits of a business as a means of compensation for services rendered or for money advanced, he is not a partner. Id ; Richardson v. Hughett, *ante*.

In the case first cited defendant advanced money to a firm to aid them in purchasing land and erecting buildings thereon. He was to receive a share of the profits therefor. Title was taken in the name of the firm and the contracts made by them. Defendant made advances from time to time as the work progressed. By reason of the sickness of one member of the firm, the title was conveyed to defendant for a few months. He afterwards conveyed to a sister of one of the partners. During this time the plaintiff furnished materials for the building. It was held that these facts did not constitute the defendant a partner in the enterprise, or render him liable for the material so furnished.

In First Nat. Bank v. Staples, Sup. Ct. Dec. 1890, the court approved the principle that persons, who have a proprietary interest in a business and its profits, is liable to creditors as partners. It also referred to the doctrine that a person, who has no interest in the business of a firm or in the capital invested, save that he is to receive a share of the profits as compensation for services, or money loaned, for the benefit of the business is not a partner and cannot be held liable as such by a creditor of the firm. For the former proposition, the court cited Macgovern v. Robertson; Hacket v. Stanley, *ante* ; and for the latter rule, Richardson v. Hughett,

*ante;* Eager *v.* Crawford, *ante;* Burnett *v.* Snyder, *ante;* Curry *v.* Fowler, *ante;* Cassidy *v.* Hall, *ante;* Keogh *v.* Minrath, *ante.*

In First Nat. Bank *v.* Staples, *ante,* the agreement between· the parties states its purpose to be, to provide for a loan of money by defendant to a firm; to provide security for its repayment, and a special method of enforcing its security; and to establish the measure of the compensation to be received by the defendants for the use of the money loaned by them and for any services they might perform in enforcing their security and collecting their debt. And it was held that the defendants did not acquire, by virtue of said agreement, any such proprietary interest in the business of the firm, or in its profits, as to make them liable as partners for the firm debt.

In Norquist *v.* Dalton, City Ct. of N. Y., June, 1890, the defendants were partners until April, 1889, when they dissolved, one of them going out of the firm and the other continuing the business on his individual account. Goods were sold, after dissolution, on the order of the continuing partner. They were sold and billed in the firm name, and the sign of the firm was allowed to remain over the door of the place of business. The creditor knew nothing of the dissolution and credited the firm with the goods. It was held that the members were liable to him, notwithstanding the dissolution. A partner withdrawing from a firm must see to it that his name is removed from the business sign in front of the establishment, or persons, relying upon such sign as evidence of the firm's continuation, and knowing nothing to the contrary, are entitled to recover for all goods parted with on the faith of the partnership relation. Id. This is upon the theory that, where one of two innocent persons must suffer a loss, it should be the one whose act or neglect caused the injury. Id.

There is not any decision, or even any dictum, to the effect that, in favor of a person claiming to be a member of a copartnership, general reputation is competent for the purpose of establishing the copartnership. Adams *v.* Morrison, 113 N. Y. 152.

In Robinson *v.* Green, 5 Harr. 115, it was held that, to prove a partnership as between partners, the evidence must be stronger than in other cases. In some of the earlier cases in this state, it was said that general reputation was competent in favor of an outside party suing persons alleged to be partners, to establish the copartnership. Whitney *v.* Sterling, 14 Johnson, 215; Gowan *v.* Jackson, 20 Id. 176; McPherson *v.* Rathbone, 11 Wend. 98; Halliday *v.* McDougall, 22 Id. 264. But in Smith *v.* Griffith, 3 Hill, 333, the rule was finally settled that, even in the action against persons as copartners by an outside party, evidence of general reputation is not competent to establish the existence of the copartnership. Since that decision, such evidence has never been received in this state for this purpose. And as such evidence alone is not sufficient or competent to establish a copartnership, so it is not competent in corroboration of other evidence. If the other evidence is insufficient for this purpose, the party, bound to establish the copartnership, must fail. He cannot supply the defect in his proof by evidence of general reputation.

Such is the general rule in this country and in England. But, when there is a general reputation that two or more persons are copartners, and they know it and permit other persons to act upon it, and to be induced thereby to give credit to the reputed firm, these facts may be proved, and may be sufficient sometimes to estop the reputed members of the firm from denying the copartnership in favor of outside parties. Adams *v.* Morrison, *ante.*

In Curry *v.* Fowler, *ante,* the defendants McCormack and defendant Fowler entered into an agreement by which Fowler agreed to advance $50,000 towards the purchase and erection of certain buildings. The Mc-Cormacks had purchased, and were the owners of, certain real estate and were about to erect fifteen buildings thereon. Fowler was to be allowed interest on the money advanced and one-half the profits arising on sale which the McCormacks covenanted should be at least $12,700. The amount of the advances and of the guaranteed profits was to be secured by bond and mortgage. The advances were made and mortgages given as agreed. It was held, in an action to recover for work and material, furnished in erecting the buildings under a contract with the McCormacks, that the agreement did not make Fowler liable to third persons as a partner.

To constitute a partnership, there must be a community of interest *inter sese,* and the parties should share the profits and losses. Richardson *v.* Hughett, *ante;* Patterson *v.* Blanchard, *ante.* This is not without exception. Where there is an agreement for sharing in the profits of a business, it is, in some cases, sufficient to establish a partnership as to third persons. Manhattan B. M. Co. *v.* Sears, *ante.* There is an exception to the last stated rule which is, that, where the person has no interest in the capital or business, and is to be remunerated for his services by a compensation from the profits, or measured by the profits, or what is to depend, as in the case of Seamen, upon the result, it has no application. Where one is only interested in the profits of a business as a means of compensation for services rendered, he is not a partner. Leggett *v.* Hyde, *ante;* Smith *v.* Bodine, 74 Id. 30; Burckle *v.* Eckhart, *ante;* Vanderburgh *v.* Hull, *ante;* Fitch *v.* Hall, 25 Barb. 13; Lamb *v.* Grover, *ante;* Richardson *v.* Hughett, *ante.*

In the last cited case, defendant entered into agreement with a firm, by which the firm agreed to manufacture and deliver to him 200 lumber wagons. He agreed to advance $50 on each. The wagons were to be sold and he was to receive one-fourth of the profits and his advances, with interest at five and one-fourth per cent. In an action to charge defendant as a partner with the debt of said firm, it was held that the agreement did not constitute a partnership, but was merely a contract for a loan. The provision as to profits was only a mode of providing a compensation for the use of the money advanced.

When a party is only interested in the profits of a business as a means of compensation for services rendered, or for money advanced, he is not a partner. Cassidy *v.* Hall, *ante.* A person, who has no interest in the

business of a firm or in the capital invested, save that he is to receive a share of the profits as a compensation for services, or for money loaned for the benefit of the business, is not a partner and can not be held as such by a creditor of the firm. Richardson *v*. Hughett, *ante*. In this case, advances were to be made upon personal property, to be manufactured and delivered, for which, when sold, the defendant was to receive one fourth of the profits and his advances with interest at five and one-fourth per cent. See Curry *v*. Fowler, *ante*, Eager *v*. Crawford, *ante*, Burnett *v*. Snyder, *ante*.

To constitute one a partner, as to third persons, it is not necessary that he should agree to share in the losses of the business. Sharing in the profits is sufficient. The reason is, that sharing in the profits deprives creditors of part of the means of payment. Man. B. & M. Co. *v*. Sears, *ante*. Where there is express and particular provision for carrying on the business for the joint benefit of the parties, for sharing in the profits, and in a degree in the losses, the mere statement that its " object is not for a partnership," does not change the legal effect of the contract. Id. It is plainly a partnership as to third persons, even though expressly agreed that it should not be so between themselves. Id.

It matters not that the parties meant not to be partners at all, and are not partners *inter sese*. They may be partners as to third persons notwithstanding. Leggett *v*. Hyde, *ante*. This effect may result, though they may have taken pains to stipulate among themselves that they will not, in any event, hold the relation of partners. Whatever person shares in the profits of any concern, shall be liable to creditors for losses also. He takes a part of the fund, which, in great measure, is the creditors' security for the payment of the debt to them. Id. The specific interest in profits which is to make a person a partner, must be a proprietary interest in them, existing before the division of them into shares. The test of partnership is a community of profit ; a specific interest in the profits, *as profits*, in contradistinction to a stipulated portion of the profits as a compensation for services. Id. ; See 3 Kent Com. 25, note b. The courts of this state have always adhered to this doctrine and applied or recognized it in the cases coming before them. In Walden *v*. Sherburne, 15 John. 409, the court says : " No principle is better established than that every person is to be deemed in partnership, if he is interested in the profits of a trade, and if the advantages, which he derives from the trade, are casual and indefinite, depending on the accident of trade. See Dob *v*. Halsey, 16 John. 34 ; Chase *v*. Barrett, *ante* ; Champion *v*. Boswick, 18 Wend. 175 ; Cushman *v*. Bailey, 1 Hill, 526 ; Everett *v*. Coe, 5 Denio, 180 ; Oakley *v*. Aspinwall, 2 Sandf. 7 ; Catskill Bank *v*. Gray, 14 Barb. 471 ; Hodgman *v*. Smith, 13 Id. 302 ; Man. B. & M. Co. *v*. Sears, *ante ;* Ontario Bank *v*. Hennessey, 48 N. Y. 545 ; Burckle *v*. Echart, 3 Id. 132.

There have been from time to time certain exceptions established to this rule. They deal with the case of an agent, servant, factor, broker or employee, who, with no interest in the capital or business, is to be remunerated for his services by a compensation from the profits, or by a compensation

measured by the profit ; or with that of seamen on whaling or other like voyages, whose reimbursement for time and labor, is to finally depend upon the result of the whole voyage.

There are other exceptions, like tenants of land, or a ferry or an inn who are to share with the owners in results, as a means of compensation for their labor and services. The decisions which establish these exceptions do not profess to abrogate the rule—only to limit it. Leggett *v.* Hyde, *ante.*

In Rockafellow *v.* Miller, 107 N. Y. 507. Miller and Eastmead formed a co-partnership under the firm name of Miller and Eastmead. The profits of the business were to be divided equally. It was agreed between Eastmead and one Folk that the latter should receive Eastmead's share of the profits with certain exceptions. Miller assented to this agreement upon condition that it should, in no respect, conflict with, or affect, the right secured by the copartnership articles. And it was held that the agreement between Eastmead and Folk did not make the latter a member of the firm or give him any interest in the firm business.

In Sipfle *v.* Isham, 46 Hun, 366, it was not found that Isham and Stimson were copartners, nor that Stimson, who made, signed and delivered the note in question to plaintiffs as a partner or otherwise, was authorized by Isham to do so. It did not appear that, when Stimson ordered the patterns, etc., of plaintiff, he had authority to carry on business in the joint names of Isham and Stimson. But it did appear that the order was given by Stimson, and that Isham had declined to go into business with Stimson. And it was held that there was no partnership shown; and that Isham did not hold himself out by acts as a partner so as to bind him as such copartner to third persons. See Central City S. Bank *v.* Walker, 66 N. Y. 424.

In Haas *v.* Roat, 16 Hun, 526 ; 26 Id. 632, the defendant Roat, advanced $700 to the defendant Mear, a traveling showman, upon an agreement that after the payment of all expenses, Roat was to receive back the $700 and have one-half of the net profits. And it was held that the defendants were partners as to third persons, irrespective of any agreement to the contrary between themselves.

In Claflin *v.* Hirsch, 19 W. Dig. 248, an agreement, by which a person participates in the profits only of a business, was held to render him a general partner as to third persons.

A person, who with his assent, is represented to be a partner, was held, in DuBois *v.* Lamson, 18 W. Dig. 490, liable as such to persons dealing with the firm, with the knowledge of, or on the faith, of such representations. Where it appears that money was loaned to persons ostensibly acting as a firm, and went into the so·called firm's bank account, the persons holding themselves out as such firm will be liable as partners for the amount of such loan at the suit of the lender. Id.

Participations in the profits of a firm makes a man a partner, and it is not necessary that any mention should be made of losses. Greenwood *v.* Brink, 1 Hun, 227. It is competent for the party or firm to employ clerks, and

give them, as a compensation for services a certain amount of profits; but it must be distinctly understood between the parties that it is as compensation, and that the party has no interest whatever in the business. Id.

It is well settled, by the law merchant, that a participation in the uncertain profits of trade, as a return for capital advanced, constitutes such participant a partner in the concern in which the capital is invested, and makes him liable to third persons, though he is to receive back his whole capital and interest, without deduction for losses or liabilities, as between himself and partners. Id. One who takes a share in the profits, as such, of a trading firm, becomes a partner as to third persons, on the ground that those profits form a portion of the funds, upon which creditors have a right to rely for payment. The modifications of the rule, in this state, required that the servant, who is compensated by a share of profits shall have no community of interest in the capital stock of the concern. He shall not, by any arrangement, be deemed a partner as between himself and the members of the firm. And he shall not suffer his name to be used as a partner, nor be the person represented by " & Co." In short, he must not hold himself out in form or in fact as a partner. Otherwise he falls within another rule. Id.

In Conklin *v.* Tuthill, 45 Hun, 594, the plaintiff leased a farm from Luddington and made an agreement with his son to work it on shares. The son was to have half the money coming from the sale of milk and from the proceeds of the farm. He negotiated the sale of milk with defendant's agent. The checks were made payable to plaintiff's order. Plaintiff's cows were subsequently advertised for sale. There was standing at the store quite a large account. The son applied to defendant's agent for $100 on the milk account, obtained and applied it on this store account. This bill was for feed furnished for the cattle on the farm. The son was to furnish one half the feed for a portion of the time and all of it subsequently. The plaintiff was living on the farm and had exclusive control of everything pertaining to the business. The milk was shipped in his name. And it was held that plaintiff and his son were not partners. The mere fact that the son was, for his services, to be paid one-half of the profits, did not constitute such relations. There was no ownership in common of the estate in the farm or of the cattle kept thereon.

Two or more persons may become partners in buying and selling land, Chester *v.* Dickerson, 54 N. Y. 1. There is nothing in the nature or essence of a partnership which requires that it should be confined to ordinary trade and commerce, or to dealings in personal property. It may exist between attorneys, conveyancers, mechanics, owners of a line of stage coaches, artisans or farmers, as well as between merchants and bankers, and it may exist between dealers and speculators in real estate. Id.

Dormant partners are held liable for the debts and contracts of the firm, because they are, in fact, members of the firm and share in its profits. Id. The law will not allow them secretly to share in the profits of the firm without taking their share of the risks and bearing their share of the losses, as to third persons. And the same reason exists for holding a

dormant partner in a real estate, as in any other partnership, liable to all persons dealing with the firm.

To constitute a partnership, it is generally necessary that the parties should share in the profits and loss. Smith *v.* Bodine, *ante*, Pattison *v.* Blanchard, *ante*. An agreement for sharing in the profits of a business is sufficient, in some cases, to establish a partnership, as to third persons. Man. B. & M. Co. *v.* Sears, *ante*. But the rule last stated does not apply where one is interested in the profits of the business as a means of compensation for services. Leggett *v.* Hyde, *ante*. The exception to the general rule relates to any person, who has no interest in the capital or business, and is to be remunerated for his services from the profits, or his compensation is to be measured by the profits. This rule only applies to third persons, and not to parties who, among themselves, are interested in the profits. Smith *v.* Bodine, *ante*.

In Grace *v.* Smith, 2 Wm. Bl. 998, and Waugh *v.* Carver, 2 H. Bl. 335, the doctrine was declared that a participation in the profits of a trade made one liable as a partner to third persons by operation of law, though he was not ostensibly a partner, and though the partnership relation was excluded by the terms of the agreement between him and his associates. This rule was regarded as the true test of partnership as to third persons until the case of Cox. *v.* Hickman, *ante*. In this case, it was held that partnership was a branch of the law of principal and agent, and that persons who share the profits of a business do not incur the liabilities of partners, unless the business is carried on by them personally, or by others as their real or ostensible agent.

But in this state, the courts have adhered to the general doctrine established by the former cases, though it proceeds upon reasons which have not been considered entirely satisfactory. Leggett *v.* Hyde, *ante*. But the participation in the profits of a trade, which makes a person a partner as to third persons, is a participation in the profits as such, under circumstances which gave him a proprietary interest in the profits before division as principal trader, and the right to an account as partner, and a lien on the partnership assets in preference to individual creditors of the partners. Burnett *v.* Snyder, *ante*; Champion *v.* Boswick, *ante*. It is not every participation in the profits which will make one a partner. Numerous exceptions to the rule have been established. Vanderburgh *v.* Hull, *ante*; Burckle *v.* Eckart, *ante*; Richardson *v.* Hughitt, *ante*. The contract of sub-partnership, which is a contract between one or two partners and a third person by which the latter is to share the profits, or the profits and losses of the partner with whom the contract is made, in the firm business, does not constitute such a participation in the profits as will make the person contracting with the partner, a partner in the firm, or liable for the partnership debts. Burnett *v.* Snyder, *ante*.

Such an arrangement is one which the law permits him to make, without involving him in the consequences, or subjecting him to the responsibilities, which flow from the partnership. Burnett *v.* Snyder, *ante*. If the ostensible agreement is not the real one, and the secret agreement is,

that he is to be a partner, clothed with a partner's rights, he cannot escape from the responsibilities of that relation, by showing the ostensible contract. Id. The law will not countenance the evasion, or permit him, under cover of the written agreement, to escape from liability as a general partner. Id.

A mere agent or servant who is to obey orders, and has no interest in the capital stock, will not be a partner, even as to third persons, merely because he is to be compensated for his services, by receiving a share of the profits which may arise from the business in which he is employed. Burckle *v.* Eckart, *ante ;* Vanderburgh *v.* Hull, *ante.* It is undoubtedly true, as a general rule, that a communion of profits will make men partners, and draw after it a liability for losses. But this rule is not universal. The exception which will best reconcile the cases, is least liable to abuse, and is so distinctly marked that it can be easily administered, is that which allows one man to employ another as a subordinate in his business and agree to pay him out of profits, if any shall arise, without giving the party employed the right, or subjecting him to the liabilities, of a partner. Burckle *v.* Eckart, *ante.*

In this case, a firm of merchants, engaged in general business, and trading, among other things, in provisions, employed a third person to attend to the purchasing and forwarding of produce. He was to act under the orders of the firm, and have as his services one-fourth of the profits arising out of the purchase and sale of produce. It was held that the person thus employed was not a partner in the business, even in respect to third persons.

In forming a copartnership, the parties can stipulate, as between themselves, that one partner shall be free from liability for loss, or that his liability be limited. Where one is to have a share of the profits of a business, in consideration of his share of capital invested and imperilled therein, whatever may be the intent of the parties, this as to third persons, makes him a partner. Ontario Bank *v.* Hennessy, *ante.*

A man on entering a partnership may stipulate to be free from all liability for loss, and such stipulation will hold good as between himself and his co-contractor. In such case, he will still be a partner, enjoying, in addition to the advantages of partnership, the indemnity offered him by his companion. Id.

In this case, a copartnership agreement was entered into between McDonald and Hennessey. No firm name was expressly adopted. The former was to give his personal attention to, and have entire control and management of, the business, with authority to arrange and negotiate the acceptance of drafts. The latter was to incur no risks and to assume no responsibility. And it was held that it was a fair inference that the copartnership business was to be done in the name of McDonald.

Where a party is not a member of the firm, but has held himself out to creditors and the public as a partner, so that persons dealing with the firm has reason to believe, and does believe, that he is a member, and, on the faith of his representations, trusts the firm, he will be estopped from

denying that he is a partner and will be liable on that ground. Vibbard v. Roderick, 51 Barb. 616.

*Corporations.*—In Merchants & Manufacturers' Bank v. Stone, 38 Mic`. 779, it was held that, where a body professing to be a corporation had been dealt with expressly as such, those who have so dealt with it cannot question its corporate existence for the purpose of charging its members individually as partners. See Leonardsville Bank v. Willard, 25 N. Y. 575 ; McFarlan v. Trinton Ins. Co., 4 Denio, 392 ; Stout v. Zulick, 48 N. J. Law, 599 ; First Nat. Bank v. Almy, 117 Mass. 476 ; Cong. Society v. Perry, 6 N. H. 164 ; Newburg Pet. Co. v. Weare, 27 Ohio St. 343 ; Casey v. Galli, 94 U. S. 673.

In First Nat. Bank v. Almy, *ante*, it was held that, when a certificate of organization had been issued by the secretary of the commonwealth to members of a proposed corporation, in accordance with the statute, said corporators were not liable as partners by reason of having transacted business before the whole of the capital stock had been paid in, though this was in direct violation of the statute on the subject.

The case of stockholders in a corporation, which may have been imperfectly organized is not analogous to the case of a limited partnership, for the reason that, in the latter instance, the intention is to form a partnership of some kind, and the statute expressly provides that, if the technical formalities are not observed, the partnership shall be an ordinary one, and its members liable *in solido*. Where there is no intention to form any partnership at all, there is no statutory authority, and no just ground, for saddling certain stockholders with liability, the nature of which they have never contemplated. Demorest v. Flack, N.°Y. Com. P., June, 1890.

Individuals may, *quoad* third persons, be charged as partners, when they are not in fact partners *inter sese*, by voluntarily and knowingly sharing in the profits of the business, or by holding themselves out as partners and thus including a credit on the faith of a partnership. Central City S. Bank v. Walker, *ante*. A liability may be created by an equitable estoppel. But when it is sought to be established upon the footing of a contract of partnership between the parties, an agreement must be shown. It will not be implied from the joint ownership of property, nor will the relation arise by operation of law. Id. A partnership does not result from a joint ownership of property, but there must be an agreement, express or implied, to participate in the profits or losses of the business. Id.; Chase v. Barrett, *ante ;* Porter v. McClune, 15 Wend. 187; Livingston v. Lynch, 4 John. 573. Stockholders, who are but *cestui que trust*, cannot without other evidence than the proof of their interest, be held to have authorized each other as partners, to pledge the credit of the whole, and to have empowered any one of the number to bind all in any matter within the ordinary course of the business of the defunct corporation. As *cestui que trust* having a common interest, each has dominion over his own share, but has no power over that of the others. Central City S. Bk. v. Walker, *ante*. There is no implied contract of copartnership between the stockholders of a defunct corporation by which they become liable as partners to third persons. If

the individual shareholders have received any part of the earnings of the business carried on by the trustees after the corporations cease to exist, or have shared in the property of the corporation, they may perhaps be held to account in equity, to the extent to which they have profited. But this does not make them liable in an action at law upon the contracts of a trustee or of the corporation, nor as partners. Id. A receipt of money, as a part of the earnings of a corporation, is no ratification of acts of business, carried on outside of the corporation, without knowledge of him, who is sought to be charged with them, that the money came from such business. Baldwin *v.* Burrows, *ante ;* Dounce *v.* Myrick, 45 Id. 180 ; Rowan *v.* Hyatt, Id. 138. In National Bank *v.* Landon, 45 N. Y. 410, there was a special agreement between the stockholders, under which the business was continued after the legal expiration of the charter, by which they made themselves partners in fact as well as in law. And they were held liable as bound by the acts of one as a partner having power to bind all, and not by reason of any special agency in the individual by whom the debt was incurred.

To make parties assuming to act in a corporate capacity, without a legal organization as a corporate body, liable as partners, it must be shown that the individuals sought to be charged were so acting at the time the contract sued upon was made, or that upon some consideration they agreed to become liable with the others as partners. Fuller *v.* Rowe, 57 N. Y. 23.

To constitute a partnership, there must be the assent of the individuals to the creation of that relation between them. It must be established by express agreement, or an authorization in advance and a consent to be bound by the acts of others as partners, or by the particular act in question or a ratification of the acts after they were performed, with full knowledge of all the circumstances necessary to an intelligent avowal or disavowal of them, or by some acts by which an equitable estoppel has been created. Central City S. Bk. *v.* Walker, *ante ;* Vessar *v.* Camp. 14 Barb. 341.

Parties, who assume to act in a corporate capacity without a legal organization as a corporate body, were intimated, in Fuller *v.* Rowe, *ante,* to be liable as partners to those with whom they contract. But this was an *obiter dictum.*